## 61064. PACE v. THE STATE.

Shulman, Presiding Judge.

Defendant appeals his conviction of the offense of child molestation. We reverse.

1. Defendant argues that the trial court abused its discretion in allowing the eight-year-old alleged victim of the offense to testify. That argument is based on a contention that she was not a competent witness. We are constrained to agree.

In pertinent part the examination as to the competency of the witness was as follows:

"By Mr. Sammons [the Assistant District Attorney]: Q. How old are you, Michelle? A. Eight. Q. Do you know when your birthday is? A. Huh-uh. Q. Do you go to school? A. Yeah. Q. Where? A. I don't know. Q. Is it here in Dallas? A. Yes. Q. What grade are you in? A. First. Q. Who lives with you, Michelle? A. Mama. Q. Do you know that when you held up your hand just now with this fellow over here? A. Yeah. Q. Do you know what telling a story is? A. Yeah. Q. What is that? A. Not supposed to tell lies. Q. Is it right or wrong to tell a lie? A. Wrong. Q. Do you know where we are today? A. Yeah. Q. Where are we? A. At court. Q. Do you know that fellow up there? A. Huh-uh. Q. Do you know what he is called? You can't remember? Do you know where you are now? A. At court.

"The Court: What does court do? [A.] Help people. The Court: Do you know what my job is? [A.] Huh-uh. The Court: Do you know what Mr. Sammons who is questioning you? [A.] Yeah. The Court: Do you know what his job is? Let me ask you this: You said you knew what it meant to tell the truth. What happens when you tell an untruth?

"By Mr. Sammons: Q. Is it bad to tell a story, Michelle? A. Yes.

"By Mr. Farless [Defense Counsel]: . . . Q. Do you know what would happen to you if you don't tell the truth when someone asks you a question? Do you? A. No. Q. Do you go to church, Michelle? A. Yeah. But I used to. Q. How long has it been since you have been to

church? A. I don't know. Q. Have you heard the expression, I swear to God? A. Yeah. Q. What does that mean to you? Michelle, where do you go to church when you go? A. I don't know. Q. Do you know how long it has been since you have been to church? A. I don't know how long. I don't know. Q. Does your mother ever read from the Bible to you? A. Huh-uh. Q. Does your grandmother ever read to you from the Bible? A. Huh-uh. Q. Does anyone ever talk to you about the Bible? A. Yeah. Q. Who? A. The preacher. Q. Do you know this preacher's name? A. Huh-uh. Q. Have you seen him in quite a while? How long has it been since you have seen him? A. I don't know. Q. Do you know what the Bible is supposed to be? A. I don't know. Q. Have you ever told fibs, made up stories? A. Huh-uh. Q. You never have had imaginary playmates, make up games to play? A. Huh-uh . . . Q. . . . Michelle, when you play, you never make up games to play? A. Huh-uh. Q. Do you ever talk to your dolls? A. Yeah. Q. Sometimes you pretend they talk back to you? They don't really, do they? A. Huh-uh . . . Q. Have you ever been given a spanking for telling a story? A. Huh-uh. Q. When I say, tell a story, do you know what I mean? A. Huh-uh. Q. If I told you I could fly without an airplane, would you believe me? A. Yeah."

We agree with defendant that on the basis of the examination of the witness, the trial court erred in ruling the child competent to testify. Further testimony of the child during the course of the trial substantiates her lack of competency to testify. We find the cases of *Miller v. State,* 109 Ga. 512 (35 SE 152); and *Johnson v. State,* 76 Ga. 76, controlling. In both cases the Supreme Court, in considering similar testimony from child witnesses, held the trial courts to have erred in determining the child competent to testify. "While questions of this character are to be left largely to the discretion of the trial judge, we feel constrained, in the present case, to hold that the judge should not have held the witness competent. In light of the rulings heretofore made by this court, we do not think it appeared that the witness sufficiently understood the *nature and obligation of an oath* to testify in the case. [We recognize that it is not necessary for a child to understand the meaning of the word "oath." *Lashley v. State,* 132 Ga. App. 427 (208 SE2d 200).] The case of *Johnson v. State,* 76 Ga. 76, supra seems to be almost controlling upon the point. What is said by Chief Justice Jackson in that case in reference to the child becoming a competent witness thereafter, when it had increased in age and been under proper moral training, will apply here. The record in the present case shows that the child was eight years of age when the trial was had, and it is probable that on another trial she may appear to have sufficient intelligence and to have been the subject of such training as to understand the responsibilities attaching to a witness in

a case where human life is involved." (Emphasis supplied.) *Miller v. State,* supra, pp. 513-514. See also *Horton v. State,* 35 Ga. App. 493 (133 SE 647); *Ashley v. State,* 124 Ga. App. 387 (184 SE2d 44).

2. The record does not support defendant's contentions that the trial court denied counsel for the defense the right to a thorough and sifting cross examination of the defendant's former wife (called as a witness for the state). Contrary to defendant's contentions, the record shows that counsel made full inquiry into the views and feelings of the witness (pursuant to Code Ann. § 38-1712), but was precluded from asking irrelevant questions of the witness (e.g., whether the witness was receiving child support payments from the father [not the defendant] of the victim). See *Decker v. State,* 139 Ga. App. 707 (2) (229 SE2d 520). We find no error.

3. Nor do we find merit in appellant's contention that the trial court erred in refusing to allow him to ask a hypothetical question of an expert witness. Since the question was not pertinent to facts in issue, the court did not err in sustaining the state's objection to such question. See *Green v. State,* 112 Ga. App. 329 (2) (145 SE2d 80).

4. Several of defendant's objections go to the general grounds. Since, in addition to the testimony of the alleged victim of the offense, the state presented inculpatory evidence sufficient to authorize conviction (e.g., defendant's alleged confession to a police officer along with corroborating testimony by the victim's mother), the trial court did not err in failing to direct a verdict in defendant's favor.

5. The record and transcript do not support defendant's allegation that the trial court was unaware of its probationary power. Therefore, defendant's claim that his sentence, otherwise within the limits prescribed by law, was improper is without merit.

For the reasons set forth in Division 1, the judgment of the trial court cannot stand.

*Judgment reversed. Birdsong and Sognier, JJ., concur.*

DECIDED FEBRUARY 10, 1981 —

*Floyd H. Farless,* for appellant.

*W. A. Foster III, District Attorney, Daniel J. Sammons, Assistant District Attorney,* for appellee.