## 77761. GIDDENS v. THE STATE.
### (380 SE2d 274)

BEASLEY, Judge.

Giddens appeals his convictions of armed robbery (OCGA § 16-8-41 (a)), theft by taking (OCGA § 16-8-2), unlawful possession of a firearm during commission of a felony (OCGA § 16-11-106 (b)), and kidnapping (OCGA § 16-5-40 (a)).

Early in the morning of Thursday, October 2, victim Carver and Jeff, a friend, left a bar and headed for Carver's car on a nearby street. As the two men approached the car, they saw Giddens sitting on the car and co-defendant Ryan leaning against a wall. Giddens apologized for sitting on the car and got up, and he and Ryan started to walk away. As Carver was opening his car door, Jeff yelled that the two men had a gun, at which point defendant stuck a gun in Carver's ribs and threatened to kill him. Jeff ran, pursued by Ryan, who chased him a short way and returned to the car. Ryan went through the glove compartment as Carver continued to struggle with defendant. Carver stood up and defendant pushed him back into the driver's seat. The two men told Carver he was going with them and they were going to kill him. Carver gave defendant his car keys and his cash and asked them to leave.

Jeff returned and yelled that he had called the police, although he had been unable to find a working phone. Defendant kept trying to get Carver into the car and shut the door. Ryan again chased Jeff off and returned. As Carver tried to exit from the passenger side of the car, Ryan grabbed his legs but lost his grip, allowing Carver to run to a bar, where he encountered a policeman who had responded to a call reporting screams. Carver described the assailants to the police.

Carver got his spare set of keys and retrieved his car, but it was stolen the next evening from the street near his apartment.

Early on Sunday, October 5, a Fayette County deputy observed Carver's car weaving and tried to pull it over. A chase resulted in the car skidding onto an embankment. Three men were in the car and two ran, leaving one Bedingfield. In the car were found a long black wig, which matched the description given by Carter of Ryan's hair during the incident, and a pistol of the type used in the robbery. A sawed-off shotgun wrapped in a sheet was tossed from the car before the stop. The arresting officer recognized Ryan and defendant as the two men who ran. Bedingfield identified Ryan as one of the two men in the car, and said he knew the other only by "Tony." He said that Ryan and Tony had picked him up in the car on Saturday night, October 4.

The next day, Carver was shown two photo spreads, one including Ryan's photo and the other including Bedingfield's. He immediately picked Ryan as the assailant without a gun. He chose Bed-

ingfield as the assailant with the gun, based primarily on the length, styling and color of his hair, as shown in a photo taken in 1981. At no time was he shown a picture of defendant. Carver was later shown a second photo of Bedingfield, taken on the night of the arrest. He identified him as the same individual whose picture he had seen earlier but expressed hesitancy as to a positive identification.

In court on a day prior to trial, Carver was present in the hallway with the district attorney's investigator. They again discussed the second individual and Carver said he needed to see the man in person. The investigator told him to go to the door of the courtroom and see if he could identify the man. Defendant was in the courtroom, along with his attorney and other people, and Carver positively identified defendant.

A motion to suppress Carver's in-court identification of defendant was made on the ground that asking Carver to identify someone else other than first-identified individual, in effect, told Carver that he identified the wrong man and impermissibly tainted any in-court identification. After a hearing, the court denied that motion.

During trial, Carver acknowledged that he initially chose the photo of Bedingfield, then related the in-court encounter and said he was sure defendant was the second man. After cross-examining Carver as well as after Ryan's cross and the State's redirect exams, defendant moved for a mistrial on the ground that the identification at the prior court date was an impermissible showup conducted without assistance of counsel, violating his Federal, Sixth Amendment, right. It was denied.

1. Defendant enumerates the trial court's failure to grant the mistrial because of alleged prosecutorial misconduct in conducting the showup. This ground, however, was not asserted in the motion for mistrial and will not be considered here for the first time. *Stokely v. State*, 188 Ga. App. 489, 490 (2) (373 SE2d 230) (1988).

2. Defendant also objects that evidence of a showup conducted after indictment is inadmissible when conducted without benefit of counsel, based on the Sixth Amendment and *United States v. Wade*, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1966). No objection to the evidence was raised at the time of its introduction and prior to trial, no motion to suppress that evidence was made. Only later was the motion for mistrial voiced. "[A] motion for mistrial which is not made at the time the questions objected to are answered is not timely and will be considered as waived because of the delay in making it. [Cits.]" *Dye v. State*, 177 Ga. App. 824, 825 (341 SE2d 314) (1986); *Boscaino v. State*, 186 Ga. App. 133, 134 (3) (366 SE2d 789) (1988); *Whittington v. State*, 184 Ga. App. 282, 285 (3) (361 SE2d 211) (1987).

3. Defendant contends there was no evidence of asportation as

an element of the crime of kidnapping. OCGA § 16-5-40. He argues that no case has upheld a kidnapping conviction on less than fifteen feet of asportation, so that what was described here by the State's witnesses did not constitute asportation of Carver. See, e.g., *Haynes v. State*, 249 Ga. 119 (1) (288 SE2d 185) (1982); *Waters v. State*, 248 Ga. 355, 367 (9) (283 SE2d 238) (1981). There is no minimum requirement as to the distance. "That asportation was of short duration is without legal significance . . . ." *Waters*, supra; *Brown v. State*, 132 Ga. App. 399, 401 (2) (208 SE2d 183) (1974); see *Briard v. State*, 188 Ga. App. 490, 491 (1) (373 SE2d 239) (1988); *McKenzie v. State*, 187 Ga. App. 840 (1) (371 SE2d 869) (1988) (as to second, third, and fourth victims).

Carver was forced into the car at least twice and both Giddens and Ryan were engaged in holding him there when he escaped. "[O]nce he refused to let [him] out of the car and held [him] against [his] will, a kidnapping occurred." *Helton v. State*, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983); see *Neal v. State*, 169 Ga. App. 714 (1) (314 SE2d 721) (1984).

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED FEBRUARY 9, 1989 —
REHEARINGS DISMISSED FEBRUARY 27 AND MARCH 13, 1989.

*Glen Galbauth, Jason M. Braswell*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Keith L. Lindsay, Nancy A. Grace, Assistant District Attorneys*, for appellee.