## A00A1351. PARSON v. THE STATE.
(539 SE2d 234)

SMITH, Presiding Judge.

David Andrew Parson was indicted on charges of aggravated assault, murder, robbery, burglary, kidnapping, and theft by taking. He was convicted by a jury of kidnapping and the lesser included offense of criminal trespass. Following the denial of his motion for new trial, Parson appeals, challenging the sufficiency of the evidence with respect to the kidnapping conviction. Because we conclude that sufficient evidence was presented to support the jury's verdict under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we affirm.

Construed in favor of the verdict, evidence was presented that the bodies of Joseph Roger Hayes (Roger Hayes) and Kathy Hayes were found inside their mobile home. Earlier that day, following a night of heavy drinking, Roger Dale Hayes (Dale Hayes), Parson, and Chet Sagner, Parson's friend, drove to the mobile home of Roger and Kathy Hayes. Roger Hayes's seven-year-old daughter, the kidnapping victim in this case, also lived in the residence.[1] Sagner testified that on the way, Dale stated he was going to kill two people by cutting their throats. According to Sagner, Parson stated he did not like one of the two people and mentioned that one of them owed him money. Sagner testified that after they arrived, the three walked to the back of the mobile home, and Dale cut the telephone wire. Parson and Dale went inside the mobile home, and Sagner returned to the car.

Parson testified that on the night before the murders occurred, Dale said "he had to go hurt somebody and hurt them bad" and told Parson that if he did not go with him, Parson would "get hurt, too." Parson acknowledged that he went to the residence of Roger Hayes but that he had nothing to do with cutting the telephone line and that he tried to keep Dale from going inside. According to Parson, Dale went inside the mobile home while he stood outside. He testified that he heard his grandfather and stepgrandmother yelling and that he saw the seven-year-old victim run out of her room. Parson then went inside, and he testified that he told the victim to go back into her room. Parson testified that the victim

was fighting me, and she was hollering, wanting her daddy

---

[1] Roger Hayes was the father of Dale Hayes, as well as the father of the kidnapping victim. Desiree Hayes, the mother of the kidnapping victim, was formerly the wife or girlfriend of Roger Hayes. At the time of the murders, however, she was married to Dale Hayes. Under this arrangement, Dale Hayes was both the half-brother and stepfather of the kidnapping victim. Parson was the grandson of Roger Hayes. Evidence was presented that Dale and Roger Hayes were involved in a custody dispute over the kidnapping victim.

and her step-mama; and I had to talk ill to her, because she was pushing on me and trying to get around me. I hollered at her once or twice, I think, and made her go back to her room, and she went and lay down, and I shut the door, and I just stood there.

In a statement given to the police, Parson stated that after Dale entered the mobile home, Dale went "flying into grandpa's bedroom" and asked Roger Hayes "if he wanted to be cut or shot, and before I leave tonight, you both will be dead." Parson further stated that he "was holding [the victim] back" during the commotion in his grandfather's bedroom. At trial, Parson testified that he held the victim for her protection, not to help Dale. When Dale came out of the bedroom, "he was bloody all over." He instructed Parson to crank Roger Hayes's car, and after Parson did so, Dale told him to "get [the victim], and let's go. So I did it." Dale, Parson, and the victim drove Roger Hayes's car to the bottom of the hill near Roger Hayes's home, where the car in which Sagner was waiting was parked. Dale and Sagner left the scene in Roger Hayes's car, while Parson and the victim left in the other car. According to Parson, although he stopped at a store "to get my head straight and back together," he took the victim "to her mama." In his statement to the police, he said that Dale had not threatened him, but during his trial testimony, Parson repeatedly stated that he was afraid of Dale and that Dale had threatened him.

The victim testified that "[a]ll the commotion going on" awakened her, and she heard her father telling her to call the police. She left her bedroom and heard her father praying and reading aloud from the Bible, and she heard Dale asking Kathy Hayes whether she wanted "to live, or have the same thing done to you as what was done to Roger." Kathy Hayes answered that she wanted "to live and keep the child," and Dale told her she "said the wrong thing." The victim stated that Parson told her she "didn't need to go back there," and she returned to her room where she tried to call the police. On cross-examination, she stated that she asked if she could go back into her bedroom, and Parson said she could do so. She denied that Parson prevented her from trying to call the police. She testified that after she went into her bedroom, Parson "came in and got [her] out of the bedroom," and she left the mobile home with him and Dale.

The victim testified that they made one stop, and Parson told her they were "going over there to meet the deputy" but that she later learned this was not true. Parson then took her to her mother's residence. The victim testified that Parson did not take her anywhere she did not want to go, although she acknowledged that she was angry with Parson because she "thought they may have lied to me, and they did, and what they done." In addition, contrary to her trial

testimony, during a videotaped interview made before trial, the victim stated that her father told her to call the police but that Parson would not let her. She also stated that Parson "had to bring me to my bedroom." We also note that the local victim-witness coordinator testified that after the victim left the courtroom, the victim was crying and told the witness that she had tried "to help" Parson. The victim denied trying to help anyone, however, and could not remember whether she made this statement.

Parson contends the State failed to prove that the victim was unlawfully asported or that the victim was held against her will. We disagree.

Under OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." And testimony by the victim of a kidnapping "concerning whether consent was given or withheld is not essential since other evidence can be utilized to establish the victim was abducted and held against her will. [Cit.]" *Strozier v. State*, 156 Ga. App. 241, 242 (274 SE2d 633) (1980). While the evidence was conflicting as to whether Parson held the victim against her will, it was for the jury to resolve conflicts in the evidence. See, e.g., *Turner v. State*, 223 Ga. App. 448, 449 (1) (a) (477 SE2d 847) (1996).

Some evidence was presented that Parson made the victim move from one room to another against her will. Parson himself testified that the victim was "fighting" him and that he talked "ill" to her and made her go into her room. And the victim stated during a videotaped interview that Parson had to bring her to her bedroom. "[A]ny unlawful asportation, however slight, is sufficient to support a kidnapping conviction. [Cits.]" *Chambley v. State*, 163 Ga. App. 502, 504 (1) (295 SE2d 166) (1982). See also *Williams v. State*, 178 Ga. App. 581, 592 (12) (344 SE2d 247) (1986). We also note that in his statement, Parson stated that Dale told him they were going inside Roger Hayes's house "to get the little girl," and he removed the victim from the mobile home at Dale's order. Given Parson's own testimony and his statement, that of Sagner, and the testimony of the victim and her statements made during a videotaped interview, we conclude that a rational trier of fact was authorized under the standard of *Jackson*, supra, to conclude beyond a reasonable doubt that Parson unlawfully abducted the victim and held her against her will.

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 14, 2000.

*William B. Barker*, for appellant.
*Michael H. Crawford, District Attorney*, for appellee.