## A04A1294. NORMAN v. THE STATE.
(603 SE2d 737)

Mikell, Judge.

Ralph Norman appeals his convictions of burglary, armed robbery, and kidnapping, challenging the sufficiency of the evidence, the denial of his motion for a continuance, and the determination that an eight-year-old witness was competent to testify. We affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt.[2]

So viewed, the evidence adduced at trial shows that at 7:30 p.m. on June 14, 2001, patrolman Jamie Bridges of the Washington Police Department received a call that a robbery had taken place at 306-C Meredith Circle. Bridges proceeded to the apartment and met with the victim, 81-year-old Willie Green Carter. She was very upset, but was able to describe the assailant as a black male wearing a white shirt and blue pants. Ms. Carter said that his face was familiar, but she could not recall his name. Bridges gave the description to other officers who arrived at the scene, and they canvassed the area. Two persons were brought back to the scene within twenty minutes, but Ms. Carter was unable to make an identification. Meanwhile, eight-year-old Broderick Blackmon, who was part of a small crowd that had gathered outside the residence, told Bridges that he had observed Norman running out of the back of Ms. Carter's apartment. The police placed Norman's picture in a photographic lineup and showed it to Ms. Carter the following day. She identified Norman from that lineup.

Ms. Carter testified that she sells sodas to school children and keeps the money they pay her in a chifforobe in her bedroom. On the night in question, a young man knocked on her door, and she opened it slightly to see who was there. He asked whether she had any soda, and Ms. Carter said she did not. The young man pushed the door open. Ms. Carter turned around, and he put what she believed to be a gun at the back of her head. He demanded money. He told her he knew where she kept it, and he ordered her to go to the bedroom. Then he told her to open the chifforobe, and she complied because he still held the gun to her head. There were pennies, nickels and dimes in a

---

[1] *Bates v. State*, 259 Ga. App. 232, 233 (1) (576 SE2d 619) (2003).

[2] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

jar inside, and she told him that he could have them. But he did not want the coins; he wanted paper money, which was in her pocketbook in the chifforobe. Ms. Carter laid her pocketbook on the bed, and he took all the cash. She testified that she had about $300 in twenties and ones, which she had saved to pay her bills. On his way out, he wiped his fingerprints from every place he touched. He took the telephone cord with him and said that he would come back and kill her if she called the police. Ms. Carter, who testified that her memory has suffered since she had a stroke, was unable to identify Norman at trial.

Linda Blackmon, Broderick's mother, testified that her mother lives behind Ms. Carter, so that the back door of each apartment is visible from the other. Broderick testified that after visiting his grandmother on the day in question, he left through the back door and saw Norman running out of the back door of Ms. Carter's apartment. According to Broderick, Norman was wearing a white shirt and blue pants.

1. Norman contends, in two enumerated errors, that the evidence does not suffice to support his convictions because Ms. Carter was unable to identify him at trial. We disagree. The evidence shows that the victim identified Norman from a photographic lineup shown to her the day after she was robbed. She further testified that he was the only person who left her apartment through the back door on the evening of the crimes. An eyewitness testified that he saw Norman running out of the same door that evening. "Most importantly, identity is a question for the trier of fact; where a witness identifies a defendant, the credibility of the witness making that identification is not to be decided by this Court."[3] There is ample evidence from which any rational trier of fact could have concluded that Norman was the perpetrator of the crimes in question.[4] Therefore, this argument fails.

In addition, contrary to Norman's contention, the evidence was sufficient for the jury to conclude that Norman took property from the victim "by use of a device having the appearance of an offensive weapon, to wit: a handgun," as alleged in the indictment.

> The presence of an offensive weapon or an article having the appearance of one may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately described by the victim. What is required

---

[3] (Footnote omitted.) *Strange v. State,* 250 Ga. App. 735, 737 (552 SE2d 899) (2001).
[4] *Jackson v. Virginia,* supra.

is "some physical manifestation of a weapon" or "some evidence from which the presence of a weapon may be inferred." Furthermore, the test is "whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon."[5]

Ms. Carter testified that she believed that the item placed against the back of her head was a gun because it was a hard object. She also testified that she "wouldn't have done what [Norman] said" if she had not believed the object to be a gun. The jury could have inferred the presence of a weapon from this testimony, rendering the evidence sufficient to support Norman's conviction of armed robbery.

Finally, Norman's conviction of kidnapping is supported by the victim's testimony that he ordered her, at gunpoint, to step from her living room into her bedroom, where the money was located. "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[6] "Any unlawful asportation, however slight, is sufficient to support a kidnapping conviction."[7] "There is no minimum requirement as to the distance."[8]

2. Norman enumerates as error the denial of his motion for a continuance. The denial of a continuance is a matter within the sound discretion of the trial court, and absent a clear showing of abuse, the lower court's decision will be affirmed.[9] Norman contends that he was deprived of his constitutional right to the effective assistance of counsel because his counsel had insufficient time to investigate his defense of alibi. However,

[m]ere shortness of time does not by itself show a denial of the rights of the accused, and mere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses. This case involves serious issues, but they are not intricate or convoluted.[10]

---

[5] (Footnotes omitted.) *Faulkner v. State*, 260 Ga. App. 794, 795 (581 SE2d 365) (2003).

[6] OCGA § 16-5-40 (a).

[7] (Citations and punctuation omitted.) *Parson v. State*, 245 Ga. App. 902, 904 (539 SE2d 234) (2000).

[8] *Giddens v. State*, 190 Ga. App. 723, 725 (3) (380 SE2d 274) (1989).

[9] *Livingston v. State*, 266 Ga. 501, 503 (1) (467 SE2d 886) (1996).

[10] (Citation and punctuation omitted.) *Marion v. State*, 224 Ga. App. 413, 416 (1) (480 SE2d 869) (1997).

In this case, the record shows that Norman was indicted on August 7, 2001, and arraigned on September 4, 2001. Defense counsel filed a motion for a continuance on October 22, asserting that she planned to present an alibi defense but had not had adequate time to investigate the information related to the defense. Counsel further complained that although she had received discovery from the state, the material did not include any witness statements. The state provided witness statements to counsel on October 24, and the court denied the motion on October 25. The motion was renewed and denied again on November 12. The case was tried on November 14.

We find no abuse of discretion in the trial court's refusal to grant a continuance. In her argument to the court, defense counsel claimed that she had not had an opportunity to explore fully the defense of alibi; however, she also indicated that she had talked to at least three of the witnesses whose names Norman had given her. Counsel also told the court that Norman was unable to provide other potential witnesses' last names or addresses. In denying the motion, the court took into account the need to proceed due to the age and health of the victim and commented that counsel's inability to prepare was attributable to Norman's failure to provide additional information rather than the state's failure to comply with discovery. We note that defense counsel had three weeks from the time the state gave her additional discovery until the case was tried. On appeal, Norman "has failed to demonstrate how additional time would have benefitted him or how any lack of time harmed him."[11] Therefore, this enumeration fails.

3. Finally, Norman asserts that the trial court erred in finding the child witness competent to testify. He contends that the trial court failed to question the child sufficiently to determine that the child understood the necessity of telling the truth. Norman, however, cites cases predating the 1989 amendment to OCGA § 24-9-5.[12] Prior to that time, children who did not understand the nature of an oath were incompetent witnesses under OCGA § 24-9-5.[13] In 1989, the General Assembly amended OCGA § 24-9-5 to provide that in criminal cases in which a child is a victim of or witness to a crime, the child is not subject to a competency challenge based on the allegation that he does not understand the nature of an oath.[14] Now, a competency challenge to the testimony of a child who witnessed a crime may be made only on the ground that the child lacks the use of reason, as

---

[11] *Gentry v. State*, 255 Ga. App. 255, 257 (2) (564 SE2d 845) (2002).

[12] *Pace v. State*, 157 Ga. App. 442 (278 SE2d 90) (1981); *Lashley v. State*, 132 Ga. App. 427 (208 SE2d 200) (1974).

[13] *McDaniel v. State*, 261 Ga. App. 360, 361 (1) (583 SE2d 141) (2003).

[14] See *Sizemore v. State*, 262 Ga. 214, 216-217 (416 SE2d 500) (1992).

provided by OCGA § 24-9-5 (a).[15] Furthermore, we hold that where, as here, the child observes the perpetrator fleeing the scene of the crime, the child is a witness to the crime within the meaning of OCGA § 24-9-5 (b). Accordingly, his competency was not subject to the challenge asserted by Norman.

Moreover, even if the child had not witnessed the crime, there would be no error. The competency of a child who is neither a victim nor a witness to a crime is decided by the trial court pursuant to OCGA § 24-9-7 (a): "The court shall by examination decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness, or infancy." Whether a child witness is competent to testify within the meaning of this Code section is a matter within the trial court's sound discretion,[16] and the exercise of that discretion will not be disturbed absent abuse.[17]

In the case at bar, the trial court conducted a competency hearing outside the presence of the jury. In response to the court's questions, the child testified that he understood the difference between the truth and a lie; that it was bad to lie and he could get in trouble if he told a lie; that he promised to tell the truth; and that if the judge asked the child to raise his hand and promise to tell the truth, he would do that. The court then asked if either the prosecutor or defense counsel wished to make further inquiry. Defense counsel objected that the child did not appear to understand the consequences of not telling the truth. The court again asked the child whether it was right or wrong to tell a lie, and the child replied "wrong." The court then ruled the child competent to testify. Norman's contention that the child "did not know specifically what would happen to [him] if [he] lied in court, has no bearing upon the determination of competency."[18] There was no abuse of discretion.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 23, 2004.

*Harold W. Wallace III*, for appellant.
*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney*, for appellee.

---

[15] Id. at 217; see also *Norton v. State*, 263 Ga. 448, 450 (3) (435 SE2d 30) (1993).
[16] *Nelson v. State*, 242 Ga. App. 63, 65-66 (6) (528 SE2d 844) (2000).
[17] *Gallagher v. State*, 196 Ga. App. 153, 154 (395 SE2d 358) (1990).
[18] Id.