## S06A1431. GREER et al. v. THOMPSON.
### (637 SE2d 698)

CARLEY, Justice.

James C. Thompson was tried before a jury in a bifurcated proceeding for trafficking in cocaine and two counts of possession of a firearm by a convicted felon. On the second day of jury deliberations, Juror John Reid informed the other jurors and then the trial court that someone who knew that the jury was split eleven to one contacted him at home the previous night and offered him money if he would change his vote to not guilty. The trial court ordered that no one leave their seats or stand up, and proceeded to swear in and question the jury foreman, Reid, Juror Victoria Cannon, Alternate Juror Tammy Hagines, and several spectators in the courtroom. As a result of that testimony and its own observations, the trial court concluded that Ms. Hagines and Ms. Cannon were not credible witnesses, and that Ms. Hagines, who did not disclose her prior knowledge of Thompson, had talked extensively the previous day with her friend Artavious Williams, a spectator and supporter of Thompson's, conversed privately with Ms. Cannon, and had to be separated from her by the bailiff. The trial court dismissed Ms. Hagines and, over defense counsel's objection and motion for mistrial, replaced Ms. Cannon with another alternate juror. After the jury resumed deliberations and returned a guilty verdict, Thompson's attorney renewed his motion for mistrial and moved to set aside the verdict, arguing in part for the first time that the trial court failed to inquire of Reid whether he could remain fair and impartial and that the entire jury panel was tainted. The trial court denied relief, proceeded to the second portion of the trial, entered judgments of conviction and sentences on the jury's verdicts, and subsequently denied a motion for new trial.

Thompson's trial attorney also represented him on appeal, and the Court of Appeals affirmed, finding in part that he could not complain of the trial court's failure to remove Reid or to give curative

instructions because he did not request those particular actions. *Thompson v. State*, 260 Ga. App. 253, 256-257 (3) (581 SE2d 596) (2003). The Court of Appeals also concluded that communication of the bribery attempt to the whole jury did not constitute such a fundamental violation of Thompson's right to a fair and impartial jury that the only available remedy is a mistrial. *Thompson v. State*, supra at 257 (3). The Court of Appeals further held that the trial court did not abuse its discretion in removing Ms. Cannon from the jury. *Thompson v. State*, supra at 257 (5). Thompson subsequently filed a petition for writ of habeas corpus. After a hearing, the habeas court granted relief, and the Warden appeals.

The habeas court concluded that defense counsel was ineffective for failing to move for a hearing pursuant to *Remmer v. United States*, 347 U. S. 227 (74 SC 450, 98 LE2d 654) (1954), or to move for a mistrial for the failure to grant such a hearing.

> To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his trial attorney's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); [cit.]. . . . We must affirm the habeas court's determination of this claim unless "its 'factual findings are clearly erroneous or are legally insufficient to show ineffective assistance of counsel. (Cit.)' (Cit.)" [Cit.]

*Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004). The habeas court relied on the holding in *Remmer* and in *Smith v. Phillips*, 455 U. S. 209 (102 SC 940, 71 LE2d 78) (1982) that, where improper jury contacts are allegedly made in an attempt to influence jurors, the trial court must hold a hearing in which all interested parties are permitted to participate. However, examination of those cases reveals that they are not applicable here.

> Obviously, neither of these cases addresses the procedures to be followed by a trial judge when a question of jury bias is being investigated during a trial. Further, "(i)n treating charges of jury misconduct, the trial judge is accorded broad discretion." [Cits.] . . . . "We leave it to the [trial] court's discretion to decide the extent to which the parties may participate in questioning the witnesses, and whether to hold the hearing in camera." [Cits.] Furthermore, these cases all involved direct appeals in federal trials, and "the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system." [Cits.]

*Wheel v. Robinson*, 34 F3d 60, 64-65 (A) (2nd Cir. 1994).

The habeas court also held that Thompson's trial counsel was ineffective for failing to state the reasons for a mistrial and for failing to object and ask for curative instructions. However, even assuming that counsel's performance was deficient in responding to the communications to the jury regarding the bribery attempt, Thompson fails to meet the prejudice prong of *Strickland*. The habeas court relied on the presumption of prejudice arising from improper jury communications which is set forth in *Remmer v. United States*, supra at 229. However, the *Remmer* presumption is "a rule of federal criminal procedure, rather than a rule of federal constitutional law." *Crease v. McKune*, 189 F3d 1188, 1193 (B) (10th Cir. 1999). Indeed, in the 52 years since *Remmer* was decided, it has never been cited by a Georgia appellate court. Moreover, even if that presumption were applicable to the states, its continued viability is in serious question. "[I]t appears that the United States Supreme Court has distanced itself from the *Remmer* presumption of prejudice . . . ." *State v. Mann*, 39 P3d 124, 135 (II) (A) (3) (N.M. 2002).

> In 1982, the Court stated . . . in *Smith v. Phillips*, [supra], that as a remedy for juror bias, the defendant is entitled to a hearing "in which [he] has the opportunity to prove actual bias." As a result several courts of appeals have concluded that *Smith* eliminated *Remmer*'s presumption of prejudice. There is considerable disagreement after *Smith* about the scope of *Remmer*'s presumption. [Cits.]

3 Wright, King & Klein, Federal Practice and Procedure: Criminal 3d § 554, p. 472, fn. 3 (2004). Although the federal criminal procedure in *Remmer* is inapplicable, the rule in Georgia is that, where an unauthorized communication to a juror occurs in a criminal case, "there is a presumption of harm and the burden is on the State to show the lack thereof. [Cits.]" *Jones v. State*, 258 Ga. 96, 97 (366 SE2d 144) (1988). See also *Ledford v. State*, 264 Ga. 60, 65 (9) (439 SE2d 917) (1994). That rule, "however, applies on direct appeal, and does not apply when a defendant is procedurally barred from raising an issue of improper [jury] communications . . . ." *Turpin v. Todd*, 268 Ga. 820, 830 (2) (b) (493 SE2d 900) (1997). In evaluating the prejudice component of a claim of ineffective assistance, we apply a presumption of prejudice only in extremely narrow circumstances which are not applicable here. *Turpin v. Curtis*, supra at 699-700 (1). "[E]ven if the law presumes prejudice for certain errors when they are timely raised," a convicted defendant who, like Thompson, is seeking to overcome a procedural bar, whether in conjunction with or separate from a claim of ineffective assistance

of counsel, "does not have the benefit of that presumption of prejudice, and must instead meet the actual prejudice test . . . ." *Turpin v. Todd*, supra at 828 (2) (b). See also *Upton v. Jones*, 280 Ga. 895, 896 (2), 897 (3) (635 SE2d 112) (2006) (quoting this language after holding, as did *Turpin*, that ineffective assistance could be relied on, not as a separate claim, but as supplying the requisite cause and prejudice to overcome procedural default). The dissent ignores this rule from *Turpin v. Todd*. Furthermore, the rule would be destroyed if the dissent were correct that the prejudice prong of *Strickland* is satisfied merely because a presumption of prejudice was part of the environ-ment in which a hearing would have been held. Moreover, the same rule which the dissent ignores applies in federal courts. *Turpin v. Todd*, supra. Thus, even if the *Remmer* presumption were viable authority with respect to state convictions, it would not apply in habeas proceedings. See *Crease v. McKune*, supra; *United States v. Pennell*, 737 F2d 521, 533 (IV) (6th Cir. 1984) (noting that a basis for the holding in *Smith* was its status as a habeas action).

> On *direct appeal*, "(a) rebuttable presumption of prejudice arises whenever a jury is exposed to external information in contravention of a [trial] court's instructions," [cit.], but this presumption does not apply in the habeas context, [cit.] . . . (Emphasis in original.)

*Vigil v. Zavaras*, 298 F3d 935, 940 (II) (A), fn. 6 (10th Cir. 2002). Accordingly, " 'the habeas court relied on an erroneous legal standard for determining prejudice.' [Cit.]" *Turpin v. Curtis*, supra at 700 (1). At the habeas hearing, Reid testified that, prior to the bribery attempt, he had decided to vote guilty based upon the evidence and that neither the phone call nor any outside information influenced his decision in any way whatsoever. There is absolutely no evidence to the contrary with respect to Reid or any of the jurors who ultimately returned the verdicts. Two other jurors who testified at the habeas hearing were not examined in this regard, and Thompson did not call the remaining nine jurors.

> Therefore, on the record before the habeas court, it is "im-possible to determine if the outcome of the trial was affected. (Cit.)" [Cit.] Thus, a remand to consider the prejudice prong of *Strickland* is unnecessary and inappropriate. [Cit.] The record contains no evidence to support the prejudice compo-nent, so [Thompson's] ineffective assistance claim must fail as a matter of law. [Cit.]

*Turpin v. Curtis*, supra.

The habeas court further held that defense counsel was ineffective in failing to move for a mistrial when the trial court expressed an opinion in violation of OCGA § 17-8-57 and of Thompson's rights to confrontation and a fair and impartial jury. When the trial court first learned of the bribery attempt, it informed those in the courtroom that it had just received two troubling written notes from the jury. The trial court explained that the first note "states that one of the jurors was personally contacted at his home after being given the charge to deliberate and a bribe to vote not guilty on behalf of the defendant was offered." The habeas court found that the phrase "on behalf of the defendant" was the offending language. However, this phrase does not necessarily mean that the person offering the bribe was acting at the direction or as a representative of Thompson. It can simply mean that such person's action or the not guilty vote itself was in the interest of, or for the benefit of, the defendant. See 1 New Shorter Oxford English Dictionary, p. 207, "behalf" (1993); Webster's Third New International Dictionary, p. 198, "behalf" (1966). The comments of the trial court show that it was not going beyond the jurors' notes, but rather was only reviewing them, and, therefore, it could not have meant that Thompson had directed the bribery attempt. In context, the phrase at issue did not add anything to that which the jurors already knew, as Reid had informed them of the bribery attempt, and it was the jury itself that sent the notes to the judge. See *Baker v. State*, 263 Ga. 79, 80-81 (2) (428 SE2d 340) (1993). A mere statement by the trial court as to what the jurors have written is no more a statement of opinion than is a declaration as to what the adverse parties contend. See *Harper v. State*, 213 Ga. App. 444, 447 (3) (445 SE2d 303) (1994). Thus, the habeas court's finding that the trial court expressed an opinion is clearly erroneous, and the performance of Thompson's attorney in failing to raise this particular issue at trial or on appeal was not deficient.

Although a remand is unnecessary with respect to improper communications to the jury, Thompson raised several unrelated grounds of relief in his petition which the habeas court did not address due to its grant of relief on the jury communications issues. Therefore, the judgment of the habeas court is reversed and the case is remanded for resolution of the remaining issues and the entry of an order on the remaining issues which complies with OCGA § 9-14-49.

*Judgment reversed and case remanded with direction. All the Justices concur, except Hunstein, P. J., Benham and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

As the majority fails to follow precedent of the United States Supreme Court, and substitutes its judgment for that of the habeas court, I respectfully dissent.

Under the decision of the Supreme Court in *Remmer v. United States*, 347 U. S. 227 (74 SC 450, 98 LE2d 654) (1954), when the trial court is informed of a bribery communication to a juror such as occurred here, the trial court must conduct a hearing.

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. [Cits.]

Id. at 229. No such hearing was held in this case.

Thompson's petition for a writ of habeas corpus rested in part on counsel's failure to ensure that the required *Remmer* hearing was held. The habeas court found that counsel's failure to move for the hearing when the purported bribery communication to Reid was revealed to the trial court, and his failure to move for a mistrial based on the trial court's failure to hold a hearing on that subject, was deficient. At the habeas hearing, counsel's only explanation for failing to assert Thompson's rights was that he did not wish to risk the ire of the trial court. As *Remmer* recognizes, the question of prejudice to a criminal defendant in circumstances such as that presented here must be properly investigated, *Remmer*, supra, and the habeas court's finding that counsel's representation fell below the standard of reasonable professional conduct was not clearly erroneous.

Nonetheless, the majority contends that *Remmer* has no precedential value. The majority argues that the United States Supreme Court has abandoned *Remmer's* statement that in the required hearing, there is a presumption of harm to the defendant flowing from the bribery communication. As authority for this conclusion, the majority points to a later statement of the Supreme Court that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U. S. 209, 215 (II) (102 SC 940, 71 LE2d 78) (1982). However, *Smith*, unlike *Remmer*, did not address a case of jury tampering, or of any external communication with a juror, but concerned the bias

inherent in a juror who was seeking employment with the prosecutor's office; the Court recognized the distinction between the situation posed in *Smith* and the seriousness of bribery communications. Id.

*Smith* did not overrule *Remmer*. Rather, *Smith* discussed *Remmer* at length, and cited *Remmer* with approval, noting that compliance with *Remmer's* procedures satisfied constitutional requirements. Id. at 217-218. Thus, *Smith's* recognition of the constitutional nature of *Remmer's* requirements shows the majority's assertion that *Remmer* is simply a rule of federal criminal procedure is incorrect. The *Remmer* requirement was not treated as merely a procedural rule by the Supreme Court, either in that opinion, or in *Smith*.

As a decision of the Supreme Court, *Remmer* is binding upon this Court, and has been for 52 years, regardless of whether it has previously been cited. The *Remmer* presumption continues to be applied in cases of jury tampering, which compared to most other improper jury communication, "is a much more serious intrusion into the jury's processes and poses an inherently greater risk to the integrity of the verdict." *United States v. Dutkel*, 192 F3d 893, 895 (II) (9th Cir. 1999). See *United States v. Cheek*, 94 F3d 136, 141 (III) (4th Cir. 1996). But see *United States v. Pennell*, 737 F2d 521, 532 (IV) (6th Cir. 1984). The cases upon which the majority relies to support its statement that *Remmer* is no longer binding precedent do not pose any issue of the "inherently greater risk" of jury tampering. See *Wheel v. Robinson*, 34 F3d 60 (2nd Cir. 1994) (expressions of juror bias and out-of-court expression of opinion by a friend of a juror); *Crease v. McKune*, 189 F3d 1188 (10th Cir. 1999) (court's ex parte communication with a juror); *State v. Mann*, 39 P3d 124 (N.M. 2002) (juror performing probability calculations in jury room independent of expert evidence).

The majority states that *Remmer's* presumption of prejudice was applied by the habeas court to Thompson's claim of ineffective assistance of counsel to meet the second prong of the test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). But, that is not the case. Rather, the habeas court found that the prejudice prong of *Strickland* was met because counsel's deficient representation deprived Reid of the hearing to which he was entitled. At such a hearing, as the habeas court noted, Reid might have been removed and replaced with an alternate. It is this fact that the habeas court relied on, in part, in finding that the prejudice prong of *Strickland* was satisfied. That a presumption would have existed in the event of a *Remmer* hearing is not the *source* of the habeas court's finding of prejudice, it is simply the factual and procedural environment in which that hearing would have been held. The habeas court's finding of prejudice flowing from counsel's failure to ensure a hearing was simply made in the context of that environment. Thus, the

majority's reliance on *Vigil v. Zavaras*, 298 F3d 935, 940 (II) (A) n. 6 (10th Cir. 2002), for the statement that there is no presumption of prejudice in the context of a habeas proceeding is simply irrelevant; the habeas court did not presume prejudice, but found it in the facts of this case.

The majority does recognize a presumption of harm arising from unauthorized juror communications in a criminal case, and that the State then has the burden to show that there is no harm. See *Ledford v. State*, 264 Ga. 60, 65 (9) (439 SE2d 917) (1994); *Jones v. State*, 258 Ga. 96 (366 SE2d 144) (1988). However, the majority also states that, in a habeas case, the presumption of harm may not be relied upon, but that actual prejudice must be found. See *United States v. Frady*, 456 U. S. 152, 170 (102 SC 1584, 71 LE2d 816) (1982). As noted above, the habeas court did not apply a presumption of harm, rather finding harm under the *Strickland* standard. And, by meeting the prejudice prong of *Strickland*, the test for actual prejudice was also met. This Court has previously examined how the actual prejudice test relates to the prejudice prong of *Strickland*.

> We are persuaded that the *Strickland* and *Frady* prejudice tests address similar concerns, and we therefore conclude that if a convicted defendant meets the prejudice prong of *Strickland*, he has satisfied the *Frady* prejudice test at least for the errors that support the ineffectiveness claims.

*Turpin v. Todd*, 268 Ga. 820, 830 (2) (b) (493 SE2d 900) (1997). Thus, in finding that *Strickland* was met, the habeas court found actual prejudice and, contrary to the majority's conclusion, did not rely upon an erroneous legal standard.

The majority also addresses the habeas court's finding that counsel was ineffective for failing to move for a mistrial when the court informed the jury about the note the court had received from Reid. Although the majority intones that this Court will not reverse the habeas court's factual findings unless they are clearly erroneous, the words are hollow. The habeas court found that "the trial judge told the jury that a bribe had been offered 'on behalf of the defendant.'" The majority takes issue with that finding, stating that the trial court's language "does not necessarily mean that the person offering the bribe was acting at the direction of or as a representative of Thompson" and that the trial court's phrase "can simply" have another meaning than that ascribed by the habeas court. The majority then re-weighs the evidence and declares that the habeas court's factual finding is clearly erroneous, as it must do if the majority is to reach its preferred outcome. The deference given by an appellate court to the factfinder is not simply a rhetorical technique to be

recited when it furthers the result an appellate court desires; rather, it is an essential principle in our system of judicial review.

Accordingly, I cannot join the majority opinion.

I am authorized to state that Presiding Justice Hunstein and Justice Benham join in this dissent.

DECIDED NOVEMBER 20, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark A. Gilbert*, for appellants.
*James N. Finkelstein*, for appellee.