## A08A1397. SULLIVAN v. THE STATE.
(671 SE2d 180)

BERNES, Judge.

This case arises out of allegations by three minor children that their babysitter, David Sullivan, forced them to perform sex acts with him and with each other. The jury found Sullivan guilty of one count of enticing a child for indecent purposes, ten counts of child molestation, one count of aggravated child molestation, and three counts of cruelty to children in the first degree. The trial court denied his amended motion for new trial. On appeal, Sullivan raises the general grounds and contends that the trial court erred by denying his motion for a continuance, by allowing the state to introduce certain statements he claims were inadmissible hearsay, and by denying his motion for a mistrial. Sullivan also contends that he received ineffective assistance from his trial counsel. Finding no reversible error, we affirm.

On appeal from a criminal conviction, we review the evidence in the light most favorable to the jury verdict. *Millender v. State*, 286 Ga. App. 331 (1) (648 SE2d 777) (2007). So viewed, the evidence shows that the sexual crimes occurred in the summer of 2002 when Sullivan, age 15, was babysitting the three child victims. W. B., a female child, was nine years old; her brother, W. P. B., was three years old; and her female friend, T. W., was eight years old. T. W. had spent the previous night at the home of W. B. and W. P. B., and T. W. was waiting for her mother to pick her up that afternoon.

Because the usual babysitter was not available, Sullivan had agreed to babysit the three children and had arrived early that

morning. After the children ate breakfast and watched television, Sullivan told them to go into the parents' bedroom. The children entered the bedroom, and Sullivan shut and locked the door after them. Sullivan sat on the bed and brandished a handgun that he had taken from the dresser beside the bed. Threatening the children with the handgun, Sullivan forced T. W. and W. P. B. to take their clothes off, to kiss with open mouths, and to lie on top of each other on the bed. While on the bed, Sullivan also forced W. P. B. to touch and lick T. W.'s vaginal area, and T. W. to touch W. P. B.'s genital area. Sullivan made W. B. watch and threatened to kill her if she tried to leave the room or call her parents. Eventually, Sullivan told T. W. and W. P. B. to stop and put back on their clothes. Sullivan unlocked the door, threatened to kill the children if they told anyone, and told them that they would get in trouble if anyone found out.

That afternoon, T. W.'s mother came and picked her up from the residence, leaving only W. B. and W. P. B. with Sullivan. Scared of Sullivan and worried that she would get in trouble with her parents, T. W. did not disclose to her mother anything that had happened. Following T. W.'s departure, Sullivan instructed W. B. to go back into the bedroom and take off her clothes. When W. B. refused to get undressed, Sullivan, who again had the handgun, forcibly disrobed her, began to beat her, and made her lie on the bed. He also got undressed. Sullivan then touched W. B.'s vaginal area with his hand and tongue, after which he forced himself on top of her and started to have sexual intercourse with her. When W. B. screamed for him to stop, Sullivan pulled away and forced W. B. to masturbate him.

After the sexual assault, W. B. returned to the living room and told W. P. B. what had happened. W. P. B. began to cry "more and more" and said that he was going to tell his parents. Sullivan, however, threatened to kill them and their mother if they told anyone what had happened. Although later that day W. P. B. attempted to tell his parents what had occurred, W. B. stopped him because she was scared and thought they would get in trouble.

The following day, W. B. telephoned T. W. and told her that Sullivan "made her have sex with him." A few months later, W. B. confided in her best friend that Sullivan had a gun and had "made her do stuff," but asked her not to tell anyone because she was scared of Sullivan. Her friend agreed and kept the matter a secret.

In late June 2005, T. W. composed a note and left it on her mother's nightstand. The note read in part: "[A] long time ago, about two years ago, I spent the night with [W. B.] and she had this crazy babysitter who made her have sex with him and made me and her little brother, [W. P. B.], who is about to be seven this year, rub on each other. . . . Please talk to me. I want to understand!!!" After reading the note, the mother immediately telephoned T. W., who was

on a day trip, and asked her about it. The mother had a longer discussion with T. W. about what had occurred once T. W. got home. She also spoke with the mother of W. B. and W. P. B. After learning that T. W. had disclosed what had happened, W. B. and W. P. B. for the first time told their mother.

T. W.'s mother contacted the authorities. Two days later, forensic interviewers conducted videotaped interviews with each of the three children at the Crescent House, a facility for sexually abused children. Based on the disclosures of the three children, Sullivan was arrested, indicted, and tried before a jury on multiple charges, including enticing a child for indecent purposes, child molestation, aggravated child molestation, and cruelty to children in the first degree.

All three child victims testified at trial and were subject to cross-examination. In addition to other witnesses and physical evidence, the state introduced the videotaped forensic interviews of the three children. Sullivan took the stand, denied committing the offenses, and accused the children of fabricating their allegations.

1. Sullivan raises the general grounds, contending that the state failed to prove he was guilty of the charged offenses beyond a reasonable doubt. We disagree. There was ample evidence sufficient for any rational trier of fact to find the essential elements of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See OCGA §§ 16-5-70 (b) (defining cruelty to children in the first degree); 16-6-4 (a), (c) (defining child molestation and aggravated child molestation); 16-6-5 (a) (defining enticing a child for indecent purposes). The testimony of the three victims and their videotaped forensic interviews were sufficient to sustain the convictions. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Mullis v. State*, 292 Ga. App. 218, 218-219 (1) (664 SE2d 271) (2008); *Berman v. State*, 279 Ga. App. 867, 869 (1) (632 SE2d 757) (2006). While Sullivan testified that he did not commit the charged offenses, "[a] jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it." (Citation and punctuation omitted.) *Bilow v. State*, 279 Ga. App. 509, 511-512 (1) (631 SE2d 743) (2006).

2. Sullivan also maintains that the trial court erred in denying his motion for a continuance. The record reflects that Sullivan was first arrested on June 22, 2005 and was briefly represented by private counsel at the time of his arraignment. On June 29, 2005, Sullivan was appointed counsel through the public defender's office. Appointed counsel prepared the case for over 11 months but ultimately had to withdraw from the case for reasons unclear from the

record. On April 4, 2006, the trial court appointed Sullivan new counsel, who received the complete case file from Sullivan's former counsel. The case went to trial a month later on May 4, 2006. Sullivan's new counsel unsuccessfully moved for a continuance, arguing that he had been given an insufficient amount of time to fully prepare the case for trial. We find no ground for reversal.

> A motion for a continuance predicated on the basis of counsel's lack of preparation for trial addresses itself to the sound discretion of the trial court and a ruling denying such a motion will not be interfered with unless the court has abused its discretion in denying the motion. Mere shortness of time does not by itself show a denial of the rights of the accused, and mere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses. Additionally, when there is no showing that a continuance would have benefitted the defendant, he has not established harm in the denial of the continuance.

(Citations and punctuation omitted.) *In the Interest of C. L.*, 289 Ga. App. 377, 381 (2) (657 SE2d 301) (2008).

Although the present case involved multiple counts, the alleged sexual crimes occurred on a single day over the course of a few hours in the same location. The state did not rely upon scientific evidence, such as DNA testing or hair analysis, to prove its case. Rather, the state's case was predicated on the testimony and prior statements of the three child victims. The case, therefore, was not overly complicated or convoluted. Accordingly, there is no merit in Sullivan's contention that a month for his newly appointed counsel to prepare for trial was inadequate as a matter of law. See *Montijo v. State*, 238 Ga. App. 696, 702 (4) (520 SE2d 24) (1999) (four weeks to prepare for trial was sufficient); *Williams v. State*, 178 Ga. App. 581, 585 (2) (344 SE2d 247) (1986) (twenty-one days to prepare for trial was sufficient); *Weaver v. State*, 170 Ga. App. 731, 732 (3) (318 SE2d 196) (1984) (three weeks to prepare for trial was sufficient).

In addition, Sullivan has failed to demonstrate that he was harmed by the denial of the continuance. To show harm, Sullivan was required to specifically identify what other evidence or witnesses he would have put forth in his defense if his counsel had been given more time to prepare; speculation and conjecture are not enough. See *Byron v. State*, 229 Ga. App. 795, 796 (3) (495 SE2d 123) (1997); *Marion v. State*, 224 Ga. App. 413, 416 (1) (480 SE2d 869) (1997). Sullivan specifically identified only one example of such alleged

evidence at the new trial hearing. Pertinently, trial counsel testified that if he had been given more time to prepare, he could have elicited testimony from Sullivan about an incident shortly after the alleged crimes in which one of the female victims was swimming in a pool playing a children's game called "chicken" with him.[1] According to Sullivan, his testimony in this respect would have called into question the victims' testimony that they were scared of him and further would have cast doubt on their abuse allegations.

Sullivan's failure to present testimony concerning the "chicken" incident does not establish that he was harmed by the denial of his motion for a continuance for two reasons. First, any alleged harm in failing to present such testimony was caused by Sullivan's own dilatory conduct, not by his trial counsel's alleged lack of preparation time. At the new trial hearing, trial counsel testified that he spoke with Sullivan about the case several times prior to trial, but Sullivan nevertheless did not mention the "chicken" incident to him until after the jury had begun its deliberations. Second, testimony of the "chicken" incident would have been cumulative of other evidence presented at trial. Sullivan elicited testimony from his mother that the three children had come over to Sullivan's house since the time of the alleged sexual crimes and introduced into evidence a videotape of a birthday party in 2004 where two of the child victims are seen with Sullivan. Under these circumstances, the denial of Sullivan's motion for a continuance was not reversible error. See *In the Interest of C. L.*, 289 Ga. App. at 382 (2) (no reversible error for failure to grant a continuance for testimony that would have been merely cumulative of other evidence); *Norman v. State*, 269 Ga. App. 219, 222 (2) (603 SE2d 737) (2004) (no harm shown from denial of continuance when failure to present a strong alibi defense "was attributable to [defendant's] failure to provide additional information" to his trial counsel).

3. Sullivan argues that the trial court erred in permitting W. B.'s best friend to testify that W. B. told her that Sullivan had a gun and had "made her do stuff." According to Sullivan, the witness's testimony should have been excluded because (a) it was hearsay that lacked sufficient indicia of reliability and (b) the witness was not included on the state's witness list. We do not agree.

(a) The Child Hearsay Statute, OCGA § 24-3-16, creates an exception to the hearsay rule for certain out-of-court statements of a child concerning sexual contact or physical abuse, provided that "the

---

[1] In his appellate brief, Sullivan claims that the "chicken" incident was recorded on videotape and involved T. W. But in his testimony at the new trial hearing, trial counsel did not identify which of the female child victims was involved in the alleged "chicken" incident and never testified that the incident had been videotaped.

child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability."[2] In determining whether the out-of-court statement has sufficient indicia of reliability, the court may consider, when applicable, the following nonexhaustive list of factors:

(1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child. These factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness.

(Citations and emphasis omitted.) *Gregg v. State*, 201 Ga. App. 238, 240-241 (3) (b) (411 SE2d 65) (1991).

In light of the relevant factors, the trial court properly admitted the testimony of W. B.'s best friend pursuant to OCGA § 24-3-16. W. B.'s disclosure to her friend occurred in the relaxed setting of a private conversation between two friends, and there was no evidence of any threats, promise of benefits, coaching, drugs, or alcohol that would have influenced W. B.'s disclosure. Nor was there any evidence that W. B. had a tendency to exaggerate or falsify information or otherwise lacked general credibility. The friend's testimony also was consistent with the testimony of the three child victims at trial and in their videotaped forensic interviews. And although W. B. did not make her disclosure to her friend immediately after the crimes

---

[2] OCGA § 24-3-16 provides:
A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

occurred, W. B. consistently testified that Sullivan had threatened to kill her and that she was scared to tell. See *Knight v. State*, 210 Ga. App. 228, 229 (1) (435 SE2d 682) (1993) (emphasizing that no bright line rule exists concerning the amount of time that can elapse between the alleged crime and the child's statement). Given these circumstances, W. B.'s statement to her friend had sufficient indicia of reliability to justify its admission into evidence under the Child Hearsay Statute. See *Peters v. State*, 206 Ga. App. 143, 144 (1) (424 SE2d 372) (1992).

(b) During trial, the prosecution informed the trial court that it had learned for the first time that W. B. had made a disclosure to her best friend concerning what had occurred. The friend was not on the state's witness list, but the trial court permitted the friend to testify over objection after first allowing Sullivan's counsel to interview her. "[T]he prosecution's failure to list a witness may be remedied by allowing the defense to interview the witness before the testimony is given." *Berry v. State*, 268 Ga. 437, 440 (3) (490 SE2d 389) (1997). Because there is no evidence of prosecutorial misconduct and Sullivan's counsel was afforded an opportunity to interview W. B.'s best friend prior to her trial testimony, the trial court did not err by allowing the friend to testify. See *Cockrell v. State*, 281 Ga. 536, 539 (3) (640 SE2d 262) (2007); *Berry*, 268 Ga. at 440 (3).

4. Sullivan further asserts that the trial court erred in admitting certain testimony by T. W.'s mother that he claims was inadmissible double hearsay. At trial, T. W.'s mother testified that T. W. told her that the babysitter made W. B. have sex with him. T. W. later testified that she learned what Sullivan had done to W. B. based on a conversation she had with W. B. on the phone. Sullivan contends that because the alleged sexual contact between him and W. B. occurred outside of T. W.'s presence, T. W.'s statement to her mother about that contact was hearsay not admissible under the Child Hearsay Statute.

It is true that the statement to T. W.'s mother was inadmissible double hearsay. Statements made by a victim *to a witness* about sexual contact between the defendant *and another child* are not admissible under the Child Hearsay Statute, where, as here, the victim at issue did not witness the sexual contact. See *Riddle v. State*, 208 Ga. App. 8, 11 (2) (430 SE2d 153) (1993). The admission of the statement, however, was not reversible error because "[t]he erroneous admission of hearsay is harmless where legally admissible evidence of the same fact is introduced." (Punctuation and footnote omitted.) *Head v. State*, 254 Ga. App. 550, 551 (2) (562 SE2d 815) (2002). Notably, T. W. herself testified at trial that W. B. told her that Sullivan "made her have sex with him," and W. B.'s statement to T. W. clearly was admissible under the Child Hearsay Statute. Like-

wise, W. B. testified at trial about what Sullivan did to her and was subject to cross-examination by defense counsel. Consequently, even if the mother's testimony about what T. W. told her happened to W. B. was hearsay, its admission did not require reversal since it was cumulative of other, properly admitted testimony. See *Smashum v. State*, 293 Ga. App. 41, 42 (1) (666 SE2d 549) (2008); *Estep v. State*, 238 Ga. App. 170, 173 (3) (518 SE2d 176) (1999).

5. Sullivan likewise argues that the trial court should have excluded from evidence, on hearsay grounds, a portion of the handwritten note composed by T. W. and a portion of T. W.'s videotaped forensic interview. In relevant part, the note stated that "[W. B.] had this crazy babysitter who made her have sex with him." T. W. made the same statement in her videotaped interview. According to Sullivan, these particular portions of the handwritten note and videotaped interview involved instances of double hearsay not admissible under the Child Hearsay Statute, since T. W. did not witness the sexual contact involving W. B.[3] Sullivan is correct that the portions of the handwritten note and videotaped interview in which T. W. repeated what W. B. had told her constituted inadmissible double hearsay. See *Krirat v. State*, 286 Ga. App. 650, 652, n. 1 (649 SE2d 786) (2007) (portions of videotapes played to the jury in which child victim repeated what she heard from someone else was inadmissible double hearsay that should have been redacted). But in light of the cumulative evidence discussed supra in Division 4, the error does not necessitate reversal. See *Smashum*, 293 Ga. App. at 42 (1); *Estep*, 238 Ga. App. at 173 (3).

6. Sullivan contends that the trial court erred in denying his motion for a mistrial. During the jury's deliberation, the parties learned that the jury foreperson had now accepted a job as a secretary with the district attorney's office, but had not yet started the job.[4] They also learned that the foreperson was currently employed (although she had given her two weeks notice) as a secretary for the private attorney who briefly represented Sullivan at the time of his arraignment. Finally, they learned that the foreperson's father, with whom the foreperson currently lived, had been indicted in the same county for cruelty to children and was currently involved in a civil lawsuit against law enforcement based on that

---

[3] Sullivan also maintains that the handwritten note should have been excluded in its entirety because the Child Hearsay Statute does not apply to disclosures of sexual abuse made by a child in a written statement provided to a third party. Our precedent establishes otherwise. See *Krirat v. State*, 286 Ga. App. 650, 654-656 (2) (649 SE2d 786) (2007) (children's written statements to police officer admissible under Child Hearsay Statute).

[4] During voir dire, the jury foreperson had testified that she had interviewed for a secretarial job with the district attorney's office.

case. After receiving this information, the trial court removed the foreperson, replaced her with an alternate juror, and indicated to the jury that they would need to begin anew their deliberations and voting on the multiple counts. Sullivan unsuccessfully argued that removal of the juror was an insufficient remedy and moved for a mistrial solely on the ground that the foreperson was currently employed by the private attorney. According to Sullivan, a mistrial had to be granted because the foreperson could have tainted the jury by disclosing to them confidential information communicated to the private attorney by Sullivan during the representation. We disagree. The trial court committed no reversible error in denying Sullivan's motion on the asserted ground.[5]

> When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred. However, in order for juror misconduct to upset a jury verdict, it must have been so prejudicial that the verdict is deemed inherently lacking in due process.

(Punctuation and footnotes omitted.) *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). "While individual questioning of jurors is an acceptable means of rebutting a presumption of harm, it is not required." (Citation and punctuation omitted.) *Lawrence v. State*, 289 Ga. App. 163, 165 (1) (657 SE2d 250) (2008). Rather, if the facts are established without contradiction, "the facts themselves may establish the lack of prejudice or harm to the defendant." (Citation and punctuation omitted.) Id.

At the new trial hearing, the removed foreperson testified, without contradiction, that she was unaware that the attorney for whom she worked had ever represented Sullivan. If the foreperson was not even aware that Sullivan had been a client of her employer, she clearly had not been privy to, and was not in a position to convey to other members of the jury, any of Sullivan's confidential client information. Under these circumstances, the presumption of prejudice was overcome by the state, and it was sufficient for the trial court to remove the foreperson and replace her with an alternate without going further and granting a mistrial. See *Artega v. State*, 282 Ga. App. 751, 752-753 (639 SE2d 634) (2006); *McConnell v. State*, 263 Ga. App. 686, 688 (3) (a) (589 SE2d 271) (2003).

---

[5] Although Sullivan raises additional grounds on appeal as to why a mistrial should have been granted, we will not consider them because Sullivan did not raise them in his motion for a mistrial in the court below. See *Adams v. State*, 197 Ga. App. 81, 82 (397 SE2d 497) (1990).

7. Lastly, Sullivan contends that he received ineffective assistance from his trial counsel.

> The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation omitted.) *Jones v. State*, 289 Ga. App. 219, 222 (2) (656 SE2d 556) (2008). Guided by this standard, we turn to Sullivan's specific ineffective assistance claims.

(a) Although unclear, Sullivan apparently contends that his trial counsel was ineffective for failing to argue that a mistrial should have been granted based on the jury foreperson's recent acceptance of a job as a secretary with the district attorney's office. Even if Sullivan's trial counsel was deficient for failing to raise this argument in support of the motion for a mistrial, Sullivan has not met the prejudice prong of *Strickland*. As discussed supra in Division 6, when irregular juror conduct is shown, prejudice to the defendant is presumed. Significantly, however, the presumption applies only where the issue was properly preserved at trial and raised as error on direct appeal; it does not apply in the context of an ineffective assistance of counsel claim. See *Greer v. Thompson*, 281 Ga. 419, 421-422 (637 SE2d 698) (2006). In the ineffective assistance context, the burden is upon the defendant to prove actual prejudice affirmatively from the record. See id. Sullivan has failed to do so.

At the new trial hearing, the removed foreperson testified that while she had accepted a job as a secretary at the district attorney's office at the time she served on the jury, she had not yet started working there, had not yet filled out any paperwork for the job, and had not yet received any compensation for her employment. Compare *Beam v. State*, 260 Ga. 784, 786 (2) (400 SE2d 327) (1991) (juror served on the jury while she was an active, full-time employee of the district attorney who prosecuted the case). As such, there was no evidence that the foreperson had knowledge of or was involved in any aspect of the current case or its investigation.[6] Moreover, the record reflects that the foreperson was just as likely to be biased in favor of

---

[6] We also note that the prosecutor handling the instant case was employed in a different satellite office in the judicial circuit, and, therefore, did not know the foreperson and was not involved in her hiring.

the defense, given the criminal allegations made against her father and his resulting civil suit against law enforcement. Finally, the foreperson testified that she did not remember specifically informing any of her fellow jurors about her acceptance of employment with the district attorney's office, and Sullivan failed to present any competent, nonhearsay testimony from other jurors rebutting the foreperson's testimony.

Given this record, there is no evidence that the jurors who remained on the jury after the foreperson's removal were tainted by improper inside information about the case communicated to them by the foreperson, or were otherwise improperly influenced by her initial presence on the jury. Sullivan's ineffective assistance claim thus failed as a matter of law because he was unable to show that the denial of his motion for a mistrial affected the outcome of his trial. See *Greer*, 281 Ga. at 422.

(b) Sullivan further asserts that his trial counsel was ineffective in not moving for the trial court to conduct a *Gregg* hearing[7] to determine whether there was sufficient indicia of reliability to admit "all of the hearsay evidence that the [s]tate intended to introduce at trial" under the Child Hearsay Statute. But a trial court is not required to conduct a *Gregg* hearing to determine the statutory requirement of indicia of reliability before receiving child hearsay into evidence. See *Brock v. State*, 270 Ga. App. 250, 254 (8) (605 SE2d 907) (2004). Rather, "[t]he statutory requirement is met if, after both parties have rested, the record contains evidence which would support such a finding." (Citation and punctuation omitted.) *Williams v. State*, 290 Ga. App. 841, 845 (4) (b) (660 SE2d 740) (2008). And Sullivan has failed to make an argument, cite to any legal authority, or point to any evidence in the record to demonstrate that any of the statements introduced at trial lacked the requisite indicia of reliability. Because Sullivan has failed to show that any of the statements would have been excluded from trial had his trial counsel filed a motion under *Gregg*, Sullivan cannot prevail on his ineffective assistance claim. See *Williams*, 290 Ga. App. at 844-845 (4) (b); *Frazier v. State*, 278 Ga. App. 685, 691 (3) (b) (629 SE2d 568) (2006), rev'd in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II), n. 1 (642 SE2d 56) (2007); *Brock*, 270 Ga. App. at 254 (8).

(c) We have reviewed Sullivan's remaining ineffective assistance claims, which are predicated on the same claims of error discussed supra in Divisions 1-6, and find them to be without merit.

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

---

[7] See *Gregg*, 201 Ga. App. at 239-240 (3) (a).

DECIDED NOVEMBER 12, 2008 —
RECONSIDERATION DENIED DECEMBER 11, 2008 —

*Kenneth W. Sheppard*, for appellant.
*Fredric D. Bright, District Attorney, Keagan W. Goodrich, Assistant District Attorney, Cheney & Baskin, Dawn M. Baskin*, for appellee.