**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten days**
**of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2018**

# In the Court of Appeals of Georgia

A18A0696. BLACKWELL v. THE STATE.

REESE, Judge.

A jury found Kenneth Blackwell guilty of aggravated child molestation, aggravated sexual battery, and statutory rape.[1] The trial court sentenced Blackwell to life plus 20 years' imprisonment. Blackwell appeals from the denial of his amended motion for new trial, arguing, inter alia, that his trial counsel was ineffective in failing to object to the improper admission of child hearsay evidence. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence presented at trial showed the following facts. In 2006, when the victim, K. S. was about seven

---

[1] See OCGA §§ 16-6-4 (a) (1), (c); 16-6-22.2 (b); 16-6-3 (a).

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

years old, Blackwell began dating K. S.'s mother. At the time, K. S. and her family lived in Ohio. According to K. S., Blackwell "started to touch" her around that time, using his fingers to touch her breasts and her vagina. Two or three years later, when K. S. was nine or ten years old, Blackwell began having sexual intercourse with her.

In 2010, when K. S. was ten or eleven years old, her family and Blackwell moved to Gwinnett County, where the sexual intercourse and fondling continued. In addition, Blackwell began to force her to perform oral sex on him. According to K. S., the sexual abuse happened "[a] lot," but she did not tell her mother because she thought her mother would not believe her.

Then, in July 2012, when K. S. was 13 years old, Blackwell impregnated her, and she had to undergo a second-trimester abortion. According to K. S., she did not tell her mother that Blackwell was the man who had impregnated her, and her mother did not ask her who it had been. Blackwell, however, told K. S.'s mother that she had been raped by someone in the neighborhood. It is undisputed that neither K. S.'s mother nor Blackwell called the police to report the alleged rape.

Following the abortion, Blackwell continued to have sexual intercourse and oral sex with K. S. repeatedly until early May 2014, when she was 15 years old. About two weeks after the last time Blackwell sexually assaulted her, K. S. ran away from home

2

and went to a friend's house seeking a place to spend the night. According to K. S., she ran away because she was afraid for her own safety and that of her little sister, who was five or six years old at the time.

The friend's mother testified that K. S. told her "about the things [Blackwell was] doing to her" and that she had told her mother about the abuse several times, but her mother did not believe her. The friend's mother testified that K. S. had "told [her that] ever since she was [nine years old, Blackwell] had been touching her and he ha[d] sex with her and . . . made her perform oral sex on him and that she [had become] pregnant by him . . . when she was . . . 13 or 14 – and that the child . . . was . . . aborted[.]" The friend's mother, who was a police officer, called K. S.'s mother, who arrived shortly thereafter, and the police.

The Gwinnett County police officer who responded to the call, Angelica Grissom, testified at trial that she spoke briefly with K. S. at the friend's home. K. S. told Grissom that Blackwell

> started touching her when she was about [seven] years old and that he actually started inserting his penis or penetrating her when she was about [ten]. [K. S.] initially told [Grissom] that in the summer of 2013 she had an abortion. [H]er mom [told Grissom, however,] that she paid for an abortion in the summer of 2012. [K. S.] stated [that Blackwell] would normally come into her bedroom late at night when her mom was asleep.

3

She stated that many times she was actually asleep herself and [Blackwell would] wake her up. [K. S. stated that the sexual abuse] happened for several years. [T]heir last encounter was about two weeks prior to th[e] report being filed with the police [in May 2014].

Grissom also testified that she asked K. S.'s mother if she believed K. S.'s claims about Blackwell, and the mother responded that she did.[3]

Detective Kim Riddle with the Gwinnett County Police Department's Special Victims Unit conducted a forensic interview of K. S. in June 2014. According to Riddle, K. S. said that the sexual abuse in Gwinnett County started in 2010 when she was in 6th grade and about eleven years old and that it continued "until two or three weeks prior to the report," i.e., early May 2014. In fact, K. S. specifically told Riddle that she had performed oral sex on Blackwell about two weeks before she reported the abuse. The State played a redacted video recording of the nearly two-hour forensic

---

[3] To the extent this testimony constituted inadmissible hearsay or improper bolstering, Blackwell's trial counsel did not object to this testimony at trial, nor did Blackwell raise the failure to object as an ineffective assistance claim or raise this issue on appeal. Thus, any error in the admission of this statement was waived. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected and[ ] a timely objection or motion to strike appears of record[.]"); *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008) (failure to raise ineffective assistance claim in trial court constitutes waiver); *Cobble v. State*, 268 Ga. App. 792, 794 (2) (603 SE2d 86) (2004) (arguments not enumerated as error in brief are waived).

interview for the jury. During the interview, K. S. detailed the years of sexual abuse by Blackwell, telling Riddle that it happened "whenever [Blackwell] wanted it."

In addition to this evidence, K. S.'s younger brother, D. S., testified that he learned about his sister's assault after she reported it. According to D. S., she told him "that the small period of time when [Blackwell] was living with [them] in [Ohio,] . . . [Blackwell] would start feeling her and . . . she couldn't tell anybody because he threatened to kill all of [them.] [After they moved to Georgia,] it started picking up more and more[,] and eventually she had an abortion."

The State indicted Blackwell, charging him with committing the acts of aggravated child molestation, aggravated sexual battery, and statutory rape against the victim. According to each count, Blackwell committed these acts sometime between October 1, 2010, and May 1, 2014.

After Blackwell was convicted on all three of the charged crimes, he filed a motion for new trial. Blackwell's trial counsel testified at the motion hearing that he did not file a motion in limine or object to the admission of K. S.'s out-of-court statements because he did not believe he had a legal basis to object, given K. S.'s age when she made the statements and the fact that she was available to testify at trial.

5

The trial court denied the motion for new trial, ruling that K. S.'s out-of-court statements to her friend's mother, her brother, Grissom, and Riddle (hereinafter, "the hearsay witnesses") were admissible under the child hearsay statute because she was under 16 years old at the time she made the statements. The court also ruled that the statements were admissible as prior consistent statements. Thus, the court concluded that counsel's failure to raise a meritless objection did not constitute deficient performance. Blackwell appeals.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[5]

---

[4] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[5] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and additional footnote omitted).

"The standard of *Jackson v. Virginia*,[6] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[7]

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[8] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[9]

"Since an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need

---

[6] 443 U. S. at 319 (III) (B).

[7] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

[8] *Strickland v. Washington*, 466 U. S. 668, 690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984).

[9] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

to address the other prong."[10] With these guiding principles in mind, we turn now to Blackwell's specific claims of error.

1. As an initial matter, we conclude that K. S.'s testimony was sufficient to prove Blackwell's guilt beyond a reasonable doubt, i.e., that he committed at least one criminal act in the manner alleged in each count of the indictment – aggravated child molestation,[11] aggravated sexual battery,[12] and statutory rape[13] – between October 1, 2010, and May 1, 2014.

---

[10] *Riggins v. State*, 279 Ga. 407, 409 (2) (614 SE2d 70) (2005) (citation and punctuation omitted).

[11] See OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which . . . involves an act of sodomy."); see also OCGA § 16-6-4 (a) (1) (applicable definition of child molestation).

[12] See OCGA § 16-6-22.2 (b) ("A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ . . . of another person without the consent of that person."); see also OCGA § 16-6-22.2 (a) ("For the purposes of this Code section, the term "foreign object" means any article or instrument other than the sexual organ of a person.").

[13] See OCGA § 16-6-3 (a) ("A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim.").

It is axiomatic that "[t]he testimony of a single witness is generally sufficient to establish a fact."[14] Here, K. S. testified at trial that Blackwell repeatedly sexually assaulted her by, among other things, having sexual intercourse and oral sex with her throughout the applicable period while her family was living in Gwinnett County. Moreover, K. S. specifically testified that Blackwell impregnated her in 2012 and, as a result, she had to undergo a second-trimester abortion when she was only 13 years old. K. S's testimony regarding the pregnancy and abortion was supported by her medical records, as well as Blackwell's admission that he accompanied her and her mother to the clinic where the procedure was performed.[15]

---

[14] OCGA § 24-14-8; see *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (In a child molestation case, "[t]he victim's testimony alone sufficed to establish the elements of the crime charged.") (citations omitted); *Lewis v. State*, 275 Ga. App. 41, 42 (1) (619 SE2d 699) (2005).

[15] See OCGA § 16-6-3 (a) (A conviction for statutory rape requires that the victim's testimony be supported by other evidence.); see also *In the Interest of B. L. S.*, 264 Ga. 643, 644 (2) (449 SE2d 823) (1994) (Evidence was sufficient to uphold conviction for delinquency based upon statutory rape because "[i]t was not necessary that the victim's testimony be corroborated in every particular[.]") (citation omitted); *Davis v. State*, 204 Ga. App. 657 (1) (420 SE2d 349) (1992) (It is not necessary for the State to present evidence to corroborate the victim's identification of the defendant as the person who committed the statutory rape. "The quantum of corroboration needed in a [statutory] rape case is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged.") (citation and punctuation omitted).

Therefore, we find that K. S.'s testimony, as supported by her medical records and Blackwell's admission, was sufficient to authorize the jury's verdict that Blackwell was guilty beyond a reasonable doubt of the crimes as charged.[16]

2. Blackwell argues that his trial counsel was ineffective for failing to object to K. S.'s testimony about sexual abuse that took place in Ohio because the trial court lacked subject matter jurisdiction over those crimes. Any objection would have been futile, however, as this evidence was admissible to show the prior difficulties between Blackwell and the victim under OCGA § 24-4-404 (b).[17]

"Unlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected

---

[16] See *Lewis*, 275 Ga. App. at 41-42 (1) (In a child molestation case, the underage victim's testimony that her stepfather fondled her and engaged in oral sex and sexual intercourse with her over a period of years was corroborated by a friend's testimony that she witnessed at least one instance of oral sex and other witnesses confirmed other sexually suggestive conduct between the defendant and victim.).

[17] See *Lopez v. State*, 332 Ga. App. 518, 520 (2) (773 SE2d 787) (2015).

by such nexus."[18] Thus, because the evidence was admissible in this case, Blackwell has failed to show deficient performance by counsel.[19]

3. Blackwell argues that his trial counsel was ineffective in failing to file a motion in limine to exclude the out-of-court statements K. S. made to the hearsay witnesses about any acts of sexual assault he committed against her prior to July 1, 2013. In a related argument, Blackwell contends that his trial counsel was ineffective in failing to object to that hearsay testimony at trial. According to Blackwell, the out-of-court statements were inadmissible under the Child Hearsay Statute because, at the time those acts were committed, the hearsay exception only applied to statements made by a child under the age of 14 years, and K. S. was 15 years old when she made her initial outcry.

---

[18] *Lopez*, 332 Ga. App. at 520 (2) (The notice requirement of OCGA § 24-4-404 (b) does not apply to evidence of prior difficulties between the accused and the alleged victim.); see also OCGA § 24-4-414 (admissibility of evidence of prior acts of child molestation committed by the defendant); Uniform Superior Court Rule 31.1 (procedural rules for the admission of similar transaction evidence).

[19] See *Anglin v. State*, 302 Ga. 333, 343 (8) (806 SE2d 573) (2017) ("The failure to pursue a futile objection does not amount to ineffective assistance.") (citation and punctuation omitted).

As shown above, the indictment charged Blackwell with sexually assaulting the victim between October 2010 and May 2014. Thus, two different versions of Georgia's Child Hearsay Statute apply in this case.

(a) For the acts of sexual assault that Blackwell committed against K. W. between July 1, 2013, and May 1, 2014, OCGA § 24-8-820 applied.[20] Pursuant to that statute,

> [a] statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, . . . and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

The record shows that the statute's notice and procedural requirements were met in this case. Thus, as Blackwell appears to concede in his brief, any out-of-court

---

[20] See Ga. L. 2013, p. 222, §§ 13 (revising OCGA § 24-8-820), 21 ("This Act shall become effective on July 1, 2013, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2013, shall be governed by the statute in effect at the time of such offense.").

12

statements made by K. S. to the hearsay witnesses about acts of sexual abuse committed by Blackwell between July 1, 2013, and May 1, 2014, were admissible under OCGA § 24-8-820.

(b) For acts of sexual assault that were committed against K. S. before July 1, 2013, former OCGA § 24-3-16 applied.[21] That statute provided:

> A statement made by a child under the age of 14 years describing any sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[22]

Thus, Blackwell is correct that the hearsay witnesses' testimony recounting statements made by K. S. about acts of sexual abuse by Blackwell that occurred before July 1,

---

[21] See OCGA § 24-8-820; see also *State v. Walker*, 342 Ga. App. 733, 733-734 (805 SE2d 262) (2017). The Georgia General Assembly substantially reenacted former OCGA § 24-3-16 (redesignating the statute as OCGA § 24-8-820) when it enacted the new Evidence Code. See Ga. L. 2011, p. 99, § 2. The new Evidence Code had an effective date of January 1, 2013. See Ga. L. 2011, p. 99, § 101. Thus, the former version of OCGA § 24-8-820 technically applied to acts committed in this case between January 1 and July 1, 2013. Given the "nearly identical" language in former OCGA § 24-3-16 and former OCGA § 24-8-820, see *Laster v. State*, 340 Ga. App. 96, 99 (1) n. 2 (796 SE2d 484) (2017), the instant analysis is the same under both statutes.

[22] See Ga. L. 1995, p. 937, § 1.

2013, were not admissible under OCGA § 24-3-16, because K. S. was 15 years old at the time she made the statements.

Pretermitting whether Blackwell's trial counsel's performance was deficient in failing to object to this evidence, however, we find that Blackwell has failed to show that there is a reasonable probability that the outcome of the trial would have been different if the evidence had been excluded.[23] Here, the hearsay witnesses' testimony recounting K. S.'s statements about sexual abuse that occurred prior to July 1, 2013, was merely cumulative of K. S.'s trial testimony and other evidence in this case, all of which was both admissible at trial and sufficient to sustain the jury's verdict.[24] As this Court has repeatedly held, the failure to object to hearsay evidence that is merely cumulative of other, properly admitted evidence is harmless and, thus, does not constitute ineffective assistance of counsel.[25] Consequently, Blackwell has failed to

---

[23] See *Robinson*, 277 Ga. at 75-76.

[24] See Division 1, supra.

[25] See, e.g., *Thomas v. State*, 296 Ga. App. 170, 174 (2) (c) (674 SE2d 56) (2009); *Sullivan v. State*, 295 Ga. App. 145, 151-152 (4) (671 SE2d 180) (2008); *Currington v. State*, 270 Ga. App. 381, 387 (4) (606 SE2d 619) (2004); *Ingram v. State*, 262 Ga. App. 304, 305 (2) (585 SE2d 211) (2003).

meet his burden of demonstrating prejudice that arose from the improper admission of this evidence.[26]

4. Similarly, Blackwell contends that the judgment of conviction is void ab initio because it cannot be discerned whether the jury improperly considered evidence of the Ohio incidents in reaching its verdict.

Pretermitting whether such consideration would have been improper,[27] each count in the indictment accused Blackwell with committing the charged act "in the State of Georgia and County of Gwinnett, on and between the 1st day of October, 2010 and the 1st day of May, 2014[.]" In the jury charge, the trial court read the indictment to the jury and specifically instructed the jury that venue in Gwinnett County had to be proven by the State beyond a reasonable doubt as to each crime charged in the indictment. The court properly instructed the jury, and we must presume that the jury followed this instruction in the absence of evidence to the contrary.[28]

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*

---

[26] See *Brown v. State*, 332 Ga. App. 635, 638 (2) (774 SE2d 708) (2015) ("Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim.") (citations omitted).

[27] See Division 2, supra.

[28] See *Brown v. State*, 300 Ga. 446, 449 (3) (796 SE2d 283) (2017).

15