**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2018**

# In the Court of Appeals of Georgia

A18A0436. PARTLOW v. THE STATE.

A18A0437. HILL v. THE STATE.

REESE, Judge.

A jury found Heath Partlow and Dennis Hill guilty of trafficking in cocaine and possession of cocaine with intent to distribute.[1] Each man appeals from the denial of his motion for new trial, contending that the trial court erred in denying his motion to suppress and in denying his motion for a directed verdict. Partlow also contends that the trial court erred in rejecting his challenge to one of the State's jury strikes, while Hill argues that the trial court erred in denying his motion for a continuance. For the reasons set forth, infra, we affirm the court's orders.

---

[1] See OCGA §§ 16-13-31 (a) (1) (B); 16-13-30 (b).

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following facts. At about 9:20 p.m. on September 12, 2012, Deputy Corey Tate with the Gordon County Sheriff's Office was parked in the median of Interstate 75, monitoring traffic. The deputy observed a Chevrolet Impala pass by and noticed that the tag light on the back of the car was not functioning. After conducting a traffic stop, the deputy walked to the window on the passenger's side. He immediately smelled a strong odor of freshly sprayed cologne. The driver, Partlow, gave the deputy his driver's license and insurance card.[3] The deputy asked Partlow to exit the car and walk with him to the back so the deputy could show him that there was no functioning tag light. Partlow agreed that the light was not working and told the deputy that "it must have just went out." The deputy told Partlow that he was going to write him a warning citation for the tag light violation. When the deputy asked him for the name of the passenger, Partlow responded that the passenger was his distant cousin, "James Jackson," and that they had been driving from Cartersville in Bartow County.

---

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[3] The evidence showed that the car belonged to Partlow's fiancee at the time.

2

As Deputy Tate was writing the warning citation, he smelled the odor of burnt marijuana coming from Partlow. While Partlow waited at the front of the patrol car, the deputy walked over to speak to Partlow's passenger. The passenger told the officer that he did not have any identification with him, but he said that his name was "Rodney Hill," that his birthdate was December 18, 1964, and that he and Partlow had been driving from Atlanta. Because the two men had made conflicting statements, Deputy Tate decided that further investigation was warranted.

In the meantime, two troopers with the Georgia State Patrol ("GSP") and another deputy with the Gordon County Sheriff's Office arrived at the scene of the traffic stop. One of the troopers approached the car and asked the passenger to exit and walk to the front of the patrol car to stand with Partlow. According to the trooper, the passenger became upset when Deputy Tate said he was going to get his drug-detection canine from his patrol car. Deputy Tate walked around the car with the dog, which alerted at the front passenger-side door.

Deputy Tate told Partlow and the passenger that he was going to search the car. Immediately after Deputy Tate and the other Gordon County deputy started searching the car, Deputy Tate observed a black bag and a pair of disposable rubber gloves on the front passenger seat. The bag was pushed toward the back of the seat, down into

3

the junction between the passenger seat's back and the seat itself. Inside the bag were eight individually packaged bags of suspected cocaine, approximately one ounce each. The officers searched the rest of the car and found, among other things, digital scales in the glove box and a pair of disposable gloves, but no more drugs.

Deputy Tate walked toward Partlow and the passenger in front of the patrol car and told them that they were under arrest. The passenger suddenly bolted and ran away, crossing six lanes of Interstate 75. The two GSP troopers started chasing him, but they had to abandon the chase when one of the troopers was injured. Over the next few hours, officers with the Gordon County Sheriff's Office, the Calhoun Police Department, and the GSP searched for the passenger, but they did not find him. Meanwhile, Deputy Tate arrested Partlow at the scene, and the State indicted him for possession of cocaine with intent to distribute, trafficking in cocaine, and failure to have a tag light.[4]

Over the next several weeks, Deputy Tate and investigators in his office attempted to identify Partlow's passenger by checking State computer records based on information obtained during the traffic stop and by looking at pictures of men named "James Jackson," "Rodney Hill," and "James Hill." According to Deputy Tate,

---

[4] The State dismissed the tag light violation charge against Partlow at trial.

however, none of the men resembled the passenger enough to investigate further. Then, in June 2014, Deputy Tate saw Dennis Hill in Tennessee and recognized him as the passenger based on a scar on Hill's left cheek, his gold tooth, his speech pattern, the tattoo on his forearm, and his unusual height, which was approximately 6 feet, 5 to 6 inches. Tate later reviewed the dashcam video from his patrol car to confirm that Hill and the passenger had the same speech pattern. Investigators also learned that Hill was the brother of Partlow's ex-wife, and that she and Hill had a brother with the same name ("Rodney Hill") that Partlow's passenger had given Deputy Tate during the traffic stop. Hill also had the same birthdate that the passenger had given to Deputy Tate (December 18), although he was born in 1966, not 1964, the year given by the passenger. Based upon this information, the State filed a superseding indictment against Partlow and Hill jointly, charging them both with trafficking in cocaine and possession of cocaine with intent to distribute.

At trial, evidence showed that the Gordon County Sheriff's Office seized the cocaine found in the car Partlow was driving and sent it to the Georgia Bureau of Investigation's Division of Forensic Sciences (the "State Crime Lab") to be analyzed. The contents of each of the bags tested positive for cocaine. The total weight of the cocaine was 221.24 grams, plus or minus 0.08 grams, and it had a purity of at least

5

36.875 percent. Deputy Tate testified that the total amount of cocaine was "a lot" more than one would normally have for personal use. Another Gordon County deputy agreed, testifying that a normal amount of cocaine for personal use was about one to three grams at a time and that the street value of the cocaine was about $100 per gram. Further, Deputy Tate testified that the cocaine was packaged in a manner that was intended for "distribution purposes." Deputy Tate also noted that digital scales, such as those found in the car, were often used to weigh cocaine before it was sold, and that drug dealers often wore gloves while packaging the cocaine to keep their fingerprints off the bags.

After hearing this evidence, the jury found both Partlow and Hill guilty of trafficking in cocaine and possession of cocaine with intent to distribute.[5] The trial court denied their motions for a new trial, and these appeals followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[6] and does not weigh the evidence or determine witness credibility. Any conflicts or

---

[5] The court merged the possession with intent convictions into the trafficking convictions for the purpose of sentencing.

[6] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[7]

"The standard of *Jackson v. Virginia*[8] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[9] With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

## *Case No. A18A0436*

1. Partlow contends that the trial court erred in denying his *Batson*[10] challenge to the State's use of a peremptory strike against the only African-American person in the jury array.

> The analysis of a *Batson* challenge involves a three-step process:
> (1) the opponent of a peremptory challenge must make a prima facie

---

[7] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

[8] 443 U. S. at 319 (III) (B).

[9] See *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010) (citation omitted).

[10] See *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent.[11]

"The ultimate burden of persuasion regarding racial motivation of peremptory strikes rests with and never shifts from the opponent of the strike. Therefore, in order to prevail on his *Batson* challenge, [the defendant] had the burden of proving that the State engaged in purposeful discrimination in the exercise of its peremptory strikes."[12]

The trial transcript shows that, after excusing the jurors for the night at the end of the first day of trial, the trial court recounted, for the record, a bench conference that had taken place during jury selection. According to the court, the State had used one of its peremptory jury strikes against Juror No. 1, the only African-American in the 42-person jury array. Partlow's counsel asserted a *Batson* challenge to the State's peremptory strike. The trial court noted that, in response to the *Batson* motion, the

---

[11] *Toomer v. State*, 292 Ga. 49, 52 (2) (a) (734 SE2d 333) (2012) (citation and punctuation omitted).

[12] *Williams v. State*, 271 Ga. 323, 324 (2) (519 SE2d 232) (1999) (citation omitted). See *Goldberg v. State*, 280 Ga. App. 600 (1) (634 SE2d 419) (2006) ("The trial court's findings as to whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous.") (punctuation and footnote omitted).

8

State had the burden of giving a race-neutral reason for the strike. The prosecutor told the court that he believed Juror No. 1 had given an untruthful answer during voir dire by failing to raise her hand or otherwise affirmatively respond when the prospective jurors were asked whether any of them had previously been arrested for anything more serious than a traffic offense. The prosecutor explained that he had checked the criminal histories of the prospective jurors prior to trial and had learned that Juror No. 1 had previously been arrested in Gordon County. According to the prosecutor, because Juror No. 1 had failed to admit to that arrest during voir dire, he struck her from the jury. The prosecutor added that, in addition to Juror No. 1, he had also used a peremptory strike to dismiss a Caucasian female who had disclosed that she had previously been arrested, even though she had later been sentenced as a first offender.[13]

Partlow's counsel asked if she could verify the criminal history of Juror No. 1, and the court stated on the record that it had independently confirmed the

---

[13] See OCGA §§ 42-8-60 (Under the first offender provisions of the Code, if a defendant who has not been previously convicted of a felony is convicted of or pleads guilty to a crime, the court may sentence [her] as a first offender. Then, if the defendant successfully completes [her] sentence or is released from [her] sentence, [she] will be exonerated of guilt and discharged as a matter of law.); 42-8-62.1 (providing that the defendant's criminal history may be sealed once [she] has competed [her] first offender sentence).

prosecutor's information. The court ruled that the State had met its burden, under *Batson*, of giving a race-neutral reason for striking Juror No. 1. Partlow's counsel then perfected the record by proffering her assertion that, during voir dire, the court had not allowed her to question Juror No. 1 to see if the failure to admit to the arrest was just an "innocent mistake" or misunderstanding on the prospective juror's part or whether she was actually being dishonest.

The transcript also shows that, before the jury was seated the next morning, the prosecutor presented the court with a comprehensive criminal history report for Juror No. 1, which showed that she had previously been arrested several times. The prosecutor stated that, based on the report, he would have struck Juror No. 1 based upon her criminal history, even if she had not lied about whether she had been arrested. Consequently, the trial court ruled that, even if Partlow's counsel had been able to question Juror No. 1 to see if her failure to admit to being arrested was the result of a mistake and was not an intentional lie, the result would not have changed, i.e., the prosecutor would have used a race-neutral peremptory strike to remove her from the jury based on her criminal history.

Upon our review of whether the trial court properly applied the three-step *Batson* analysis in this case, we note that, once Partlow raised his *Batson* challenge,

the prosecutor responded to it by offering his reason for striking Juror No. 1, and the trial court based its ruling on that explanation. Thus, the issue of whether Partlow made a prima facie showing of discrimination under the first step is moot.[14] Instead, we only need to determine whether the prosecutor's explanation was sufficiently race-neutral to support the court's ruling that the prosecutor did not act with discriminatory intent when striking Juror No. 1.[15]

> When conducting this review, we are mindful that the decision as to discriminatory intent rests largely upon assessment of the prosecutor's state of mind and credibility and therefore lies peculiarly within a trial judge's province. Consequently, we give great deference to the trial court's factual findings, which are disregarded only if they are clearly erroneous.[16]

This Court has previously ruled that "[a] prospective juror's criminal history is an adequate race-neutral reason to strike a prospective juror."[17] Accordingly, we

---

[14] See *Toomer*, 292 Ga. at 52 (2) (a); *Jackson v. State*, 288 Ga. App. 339, 342 (1) (b) (654 SE2d 137) (2007).

[15] See *Toomer*, 292 Ga. at 52 (2) (a); *Jackson*, 288 Ga. App. at 342 (1) (b).

[16] *Jackson*, 288 Ga. App. at 342 (1) (b) (citation and punctuation omitted).

[17] Id. at 344 (1) (b) (ii) (citations omitted). See also *Alexander v. State*, 273 Ga. 311, 312 (2) (540 SE2d 196) (2001) ("[T]he criminal arrest history of a prospective juror's family members is a sufficiently race-neutral reason to satisfy the dictates of

11

conclude that Partlow has failed to show that the trial court erred in denying his *Batson* motion.

2. Partlow contends that the court abused its discretion when it denied his motion to suppress the cocaine seized during the traffic stop. He argues that the traffic stop was illegal because there was no reasonable suspicion to authorize it.

"[T]he stop of a vehicle is authorized if an officer observes the commission of a traffic offense. When an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment[,] even if the officer has ulterior motives in initiating the stop."[18] Further, "[i]n reviewing the trial court's order on a motion to suppress, we construe the evidence most favorably to the upholding of the trial court's findings and judgment. We review the trial court's factual findings for clear error, but we review de novo the application of the law to those facts."[19]

---

*Batson*. . . . Furthermore, in exercising a peremptory strike, the prosecution may rely on information and advice provided by others so long as this input is not predicated upon the race of the prospective juror.") (punctuation and footnotes omitted).

[18] *Navicky v. State*, 245 Ga. App. 284, 285 (1) (537 SE2d 740) (2000) (punctuation and footnotes omitted).

[19] *State v. Cooper*, 260 Ga. App. 333 (579 SE2d 754) (2003) (footnotes omitted).

Here, during the motion to suppress hearing,[20] Deputy Tate testified that he stopped Partlow's car because it did not have a functioning tag light.[21] According to the deputy, when he and Partlow walked to the back of the car and he showed Partlow that the tag light was not working, Partlow "did not dispute it. He confirmed that it was not working at that time." In fact, according to the deputy, Partlow expressed surprise that the light was not working because he had just had the car "serviced," and Partlow talked about buying a replacement bulb as soon as the traffic stop was over. The judge watched Deputy Tate's dashcam video-recording of the traffic stop during the motion to suppress hearing.

Although there was testimony that the tag light may have started working at some point during the stop (possibly after the deputy slammed the trunk shut during the search), such evidence does not demand a finding that there was no legal basis for

---

[20] The judge who conducted the hearing on Partlow's motion to suppress was different than the judge who presided over the trial in this case. The trial judge subsequently adopted the first judge's ruling on the motion during trial.

[21] See OCGA § 40-8-23 (d) ("Either a taillight or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any taillight or taillights, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted.").

13

the stop.[22] Instead, it was for the judge to decide, based on the testimony presented and the dashcam video-recording, whether the stop was authorized due to the deputy's observation of a traffic violation,[23] i.e., a nonfunctioning tag light.[24]

Given the evidence presented, we conclude that the judge did not err in denying Partlow's motion to suppress in this case.[25]

3. Partlow argues that there was insufficient evidence to support his convictions and that the trial court erred in denying his motion for a directed verdict.[26]

---

[22] See *Jones v. State*, 259 Ga. App. 506, 507 (1) (578 SE2d 165) (2003) ("[A]n officer's honest belief that a traffic violation has been committed in his presence, even if ultimately proven incorrect, may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop. In judging the officer's honest belief, a court should determine whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.") (citations and punctuation omitted).

[23] See *State v. Carr*, 322 Ga. App. 132 (744 SE2d 341) (2013) (On appeal from a trial court's ruling on a motion to suppress, "that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.") (citation and punctuation omitted).

[24] See *Hampton v. State*, 287 Ga. App. 896, 898 (1) (652 SE2d 915) (2007); *Navicky*, 245 Ga. App. at 285 (1).

[25] See *Carr*, 322 Ga. App. at 132; *Hampton*, 287 Ga. App. at 898 (1); *Navicky*, 245 Ga. App. at 285 (1).

[26] See *Hampton*, 287 Ga. App. at 896 (1) ("The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the

14

Specifically, he argues that the evidence was insufficient to prove that he knowingly possessed the cocaine found in the car he was driving. According to Partlow, the drugs belonged to his passenger, who had equal access to the vehicle, and he (Partlow) had no knowledge that the drugs were present. He argues that, because the deputy left the passenger alone in the car after Partlow exited it to look at the tag light, the passenger had the opportunity to try to hide the drugs by stuffing them down into the passenger seat. He also argues that the State presented no evidence at trial, such as fingerprints or the digital scale found in the glove box, to show that he had handled the drugs.

> Constructive possession exists where a person[,] though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing. A finding of constructive possession cannot rest [solely] upon the person's spatial proximity to the object. However, as long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact.[27]

_____

sufficiency of the evidence to support a conviction.").

[27] *Feliciano v. State*, 302 Ga. App. 328, 330-331 (690 SE2d 680) (2010) (citations and punctuation omitted). Here, the trial transcript shows that the trial court instructed the jury on actual and constructive possession, sole and joint possession, and equal access.

Further, in cases such as this, where contraband is found in a vehicle, "the State is generally entitled to an evidentiary presumption that the owner or driver of the automobile is in constructive possession of the contraband."[28] Here, the evidence showed that Partlow was driving the vehicle at the time of the stop, that the car belonged to his then-fiancee (his wife at the time of trial), that he was jointly insured on the vehicle, and that he "regularly" drove the car. Thus, there was evidence that Partlow owned or controlled the vehicle in which the cocaine was found at the time it was discovered.

> Additionally, the fact that [Hill, as the passenger,] had equal access to the vehicle is inconsequential. Both [Partlow and Hill] were charged in the same indictment with jointly trafficking in cocaine, and equal access provides no defense where, as here, the evidence shows that the person who had equal access was in joint constructive possession of the contraband.[29] . . . Furthermore, it has long been the law that knowledge may be proved by facts and circumstances from

---

[28] Id. at 331 (citation and punctuation omitted).

[29] See *McNeal v. State*, 326 Ga. App. 429, 433 (2) (756 SE2d 660) (2014) ("It is true that the presumption of possession flowing from a defendant's status as driver of a vehicle may be rebutted if the driver presents evidence that other persons had equal access to the vehicle and contraband. Notably, however, the equal access rule does not apply to eliminate the presumption of possession where all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of the contraband.") (citations, punctuation, and emphasis omitted).

16

which a jury could reasonably infer that a defendant knowingly possessed contraband. Indeed, OCGA § 16-2-6 provides that a jury may find criminal intention "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[30]

In this case, Partlow's knowledge that there was cocaine in the car could be inferred from the circumstances presented. Partlow gave Deputy Tate a different name for the passenger than the passenger himself (Hill); Partlow falsely told the deputy that the passenger was his distant cousin; and the men gave conflicting stories about where they had been prior to the traffic stop.[31] "A jury could infer that one or both were lying and that these lies evidenced guilty knowledge."[32] In addition, the jury was able to watch the dashcam video showing Partlow's general demeanor and his interactions with Hill and the officers during the traffic stop, including just before Hill suddenly bolted from the scene. The jurors also saw photos from which they could infer that the black bag of cocaine would have been within Partlow's arm's

---

[30] *Feliciano*, 302 Ga. App. at 331 (citations and punctuation omitted).

[31] See Division 5, infra, regarding the jury's finding, as a matter of fact, that Hill was the passenger.

[32] *Feliciano*, 302 Ga. App. at 331 (citations and punctuation omitted).

17

reach when he was in the driver's seat. In addition, digital scales and disposable gloves were found in the car, and there was testimony that both of these items were typically used when packaging drugs for sale.

Accordingly, we conclude that the evidence was sufficient to support the jury's finding that Partlow knowingly had at least joint possession of the cocaine found in the car and, thus, was guilty of the crimes charged beyond a reasonable doubt.[33]

*Case No. A18A0437*

4. Hill contends that the trial court abused its discretion in failing to grant his request for a continuance so he could hire an attorney.

"All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require."[34] "We will uphold a trial court's ruling on a motion for continuance absent a clear abuse of discretion."[35]

---

[33] See id. at 331-332.

[34] OCGA § 17-8-22.

[35] *Alwi v. State*, 331 Ga. App. 903, 904 (773 SE2d 387) (2015) (citations and punctuation omitted).

18

The record shows that Hill was indicted for the instant crimes in August 2014. At some point prior to that or shortly thereafter, he was placed in federal custody on unrelated charges. Pursuant to an Interstate Agreement on Detainers ("IAD"),[36] Hill requested a transfer from federal prison to the temporary custody of the Gordon County Sheriff's Office in April 2015 so that he could have a "speedy and efficient prosecution" on the pending indictment in this case. In the IAD, Hill explicitly requested that counsel be appointed to represent him at trial. Hill was transferred to Gordon County on April 23, 2015.

The Georgia Public Defender Council appointed two attorneys to represent Hill at least ten days before trial, and they received discovery from the State in a timely manner. On June 15, 2015, the first day of trial, however, one of Hill's appointed counsel moved for a continuance, telling the court that Hill "is in the process of hiring different counsel. And because of that he has instructed me to ask the Court for a continuance to allow him time to do that because of the recency in which [his two appointed counsel] were appointed to represent him." Hill did not provide the name of the attorney he was attempting to hire. The trial court denied the motion for a continuance, ruling that Hill had asked for a trial on these charges, had been

_____

[36] See OCGA § 42-6-20 (providing the text for a detainer agreement).

19

transferred from federal custody in order to get the charges quickly and efficiently resolved, and, as requested, had been appointed counsel, who had had sufficient time to prepare for trial.[37]

> The Constitution of Georgia[38] has been interpreted to confer upon every criminal defendant the right to be represented by counsel of his own selection whenever he is able and willing to employ an attorney, and uses reasonable diligence to obtain his services. And a criminal defendant who is financially able to retain the services of an attorney has a constitutional right under the Sixth Amendment of the United States Constitution to secure counsel of his own choice, but this does not mean that a defendant may retain any counsel at any time he wishes; there are limits to a defendant's right to counsel of choice. Thus, a defendant's right to counsel may not be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same. Indeed, when a defendant attempts to hire new counsel for purposes of delay, a trial court does not abuse its discretion by prohibiting such conduct. Therefore, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. Accordingly, a trial court must balance the defendant's

---

[37] Further, as the trial court later noted, unless the deadline was extended pursuant to the IAD, Hill had to be tried on the charges within 180 days, and Gordon County only conducted jury trials approximately every three months.

[38] Ga. Const. of 1983, Art. I, Sec. I, Par. XIV.

20

constitutional right to the counsel of his choosing against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice.[39]

When a motion for a continuance is predicated on the basis of counsel's lack of preparation for trial, "the conduct of the party is a relevant and proper consideration of the court in the exercise of its discretion in order to prevent a party using the discharge and employment of counsel as a dilatory tactic. In all cases, the party making an application for a continuance must show that he has used due diligence [in obtaining private counsel]."[40] "[G]enerally, whether a defendant has exercised due diligence in hiring counsel is a factual question, and the trial court's grant or denial of a continuance on this basis will not be disturbed absent an abuse of discretion."[41]

In this case, the trial began ten months after Hill was indicted, and seven weeks after Hill requested appointed counsel and was transferred from federal custody to the

---

[39] *Alwi*, 331 Ga. App. at 904-905 (citations and punctuation omitted).

[40] *Marion v. State*, 224 Ga. App. 413, 414 (1) (480 SE2d 869) (1997) (citations and punctuation omitted).

[41] *Lee v. State*, 254 Ga. App. 417, 420 (2) (562 SE2d 800) (2002) (citation and punctuation omitted).

21

custody of the Gordon County Sheriff's Office. Yet, there is nothing in the record that shows that Hill expressed his intention to retain private counsel before the first day of trial, and, at that time, Hill failed to identify the attorney he was planning to hire or demonstrate what efforts, if any, he had taken to do so.

Moreover, the fact that Hill's appointed counsel had a fairly short time to prepare for trial does not, by itself, demonstrate a denial of Hill's right to counsel.[42]

> [M]ere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses. Additionally, when there is no showing that a continuance would have benefitted the defendant, he has not established harm in the denial of the continuance.[43]

"To show harm, [Hill] was required to specifically identify what other evidence or witnesses he would have put forth in his defense if his counsel had been given more time to prepare; speculation and conjecture are not enough."[44] Hill has presented no

---

[42] See *Sullivan v. State*, 295 Ga. App. 145, 148 (2) (671 SE2d 180) (2008).

[43] Id. (citation omitted). See *Beard v. State*, 178 Ga. App. 265, 265-266 (1) (342 SE2d 751) (1986) ("There is no fixed rule as to the number of days which must be allowed counsel to prepare in a criminal proceeding; it is dependent upon the facts and circumstances of each case[.]") (citation omitted).

[44] *Sullivan*, 295 Ga. App. at 148 (2) (citations omitted).

evidence to meet this burden, nor has he asserted a claim of ineffective assistance of counsel alleging any missteps or oversights by his appointed counsel during trial.

Accordingly, we conclude that the trial court did not abuse its discretion in denying Hill's request for a continuance.[45]

5. Hill contends that there was insufficient evidence to identify him as the passenger in the car at the time of the traffic stop and that, as a result, the trial court erred in denying his motion for a directed verdict. Specifically, he argues that the eyewitnesses who identified him at trial as the passenger saw him only briefly during the night-time traffic stop and that the State failed to present any fingerprints or other objective evidence to prove that he was, in fact, the passenger.

"Identity is a question of fact for the trier of fact, and where a witness identifies a defendant, the credibility of the witness making such identification is not to be

---

[45] See *Beard*, 178 Ga. App. at 266 (1) ("Clearly, there is no abuse shown here, particularly in view of defendant's decision to employ new counsel knowing the trial was ten days off, the significance of which factor was exacerbated by not bringing [the desire for additional time] to the attention of the court until the moment for trial[.]"). See generally *Alwi*, 331 Ga. App. at 905 ("Undue haste in the administration of the criminal law is as much to be condemned as unnecessary delay. The true course lies between these two extremes. The law vests the determination of questions relating to the time of trial in the discretion of the trial judges; and this court will not interfere with their rulings on the subject, unless it is manifest that there has been an abuse of discretion.") (citations and punctuation omitted).

decided by this [C]ourt."[46] Further, "[t]he testimony of a single witness is generally sufficient to establish a fact."[47] In this case, Deputy Tate and two other law enforcement officers present during the traffic stop identified Hill at trial as the passenger.[48] In fact, one of the GSP troopers testified that, while the deputies searched the car during the traffic stop, he spoke with the driver and the passenger, and the trooper identified them both at trial as Partlow and Hill, respectively.

To the extent Hill argues that the officers did not have an adequate opportunity to observe him during the traffic stop, "the fact that a witness may have [had] only a 'fleeting' opportunity to observe a perpetrator at the crime scene does not per se

[46] *Buice v. State*, 289 Ga. App. 415, 417 (1) (657 SE2d 326) (2008) (citation and punctuation omitted). See *Pace v. State*, 235 Ga. App. 872, 873 (510 SE2d 617) (1999) ("[D]etermination of a witness' credibility, including the accuracy of identification testimony, is within the exclusive province of the jury.") (citations omitted).

[47] OCGA § 24-14-8.

[48] To the extent Hill argues that Deputy Tate's identification of him in Tennessee was the product of an impermissibly suggestive procedure, Hill failed to object to the admissibility of the deputy's identification testimony at trial on this basis. Thus, this argument is deemed waived. See *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection, even of a constitutional magnitude, which were not raised and determined in the trial court.") (footnote omitted).

24

render [an] in-court identification inadmissible."[49] Instead, challenges to the reliability of in-court identifications "must be made through cross-examination[ ]" of the witness and "go to the weight and credibility of [the identification] testimony, not to its admissibility."[50] In this case, Hill's counsel had the opportunity to thoroughly cross-examine each of the officers in order to expose any weaknesses in their testimony. Thus, the eyewitnesses' identification testimony constituted direct evidence to support the jury's finding that Hill was the passenger in Partlow's car at the time of the stop.

Moreover, the jury had the opportunity to view the dashcam video of the traffic stop and still photos taken from the video, and it was able to compare those images with Hill's appearance during the three-day trial.[51] "It is not beyond the ken of the

---

[49] *Davis v. State*, 216 Ga. App. 580, 582 (2) (455 SE2d 115) (1995) (citation and punctuation omitted).

[50] *Jackson v. State*, 335 Ga. App. 500, 502 (1) (782 SE2d 287) (2016) (citations and punctuation omitted).

[51] See *Douglas v. State*, 312 Ga. App. 585, 587 (1) (718 SE2d 908) (2011) (A surveillance tape from the crime scene, as well as still images taken from the video, were submitted to the jury. Although no witness positively identified the defendant as a participant in the robbery, the jury had the opportunity to examine this evidence and compare them with the defendant at trial. Thus, the jury was authorized to conclude that the defendant was one of the robbers.); *Buice*, 289 Ga. App. at 417 (1) ("[T]he jurors were able to determine for themselves whether [the defendant's]

25

average juror to decide as a matter of fact whether the identity of a person in a video is the defendant."[52]

The eyewitness testimony identifying Hill as the passenger was also corroborated by other evidence. As shown above, Deputy Tate testified that, during the traffic stop, the passenger identified himself as "Rodney Hill," which was the name of Hill's brother.[53] In addition, the birthdate the passenger gave to Deputy Tate was December 18, 1964, i.e., the *same date* as Hill's birthday, but a different year. As the State notes, the jury could infer from this evidence that it was significantly more likely that Hill would know his own birthdate and the name of his brother than it was that "James Jackson" (the man Partlow identified as his distant cousin and his passenger during the stop, and who had no apparent relationship to Hill) would know

---

appearance [during trial] matched that of the perpetrator depicted in the store's surveillance videotape[.]"); *Brown v. State*, 277 Ga. App. 169, 171 (1) (626 SE2d 128) (2006) (The evidence was sufficient to identify the defendant as the person who robbed a convenience store because the jury had the opportunity to see the defendant during the three-day trial and compare his appearance with the photos taken by the store's security camera during the robbery.).

[52] *Douglas*, 312 Ga. App. at 587 (1) (citations and punctuation omitted).

[53] The State presented a picture of Rodney Hill from his driver's license for comparison purposes.

the same information. Finally, the evidence showed that Hill's sister was Partlow's

ex-wife, which made Hill and Partlow former brothers-in-law.

Given this direct and circumstantial identification evidence, we conclude that

the jury was authorized to find, beyond a reasonable doubt, that Hill was the

passenger in Partlow's car at the time of the traffic stop. Consequently, the trial court

did not err in denying Hill's motion for a directed verdict and motion for new trial on

the basis of insufficient evidence.

6. Hill argues that the trial court abused its discretion in denying the motion to

suppress evidence based upon an illegal traffic stop.[54] Assuming without deciding

that Hill, as a passenger with no property interest in the car, had standing to challenge

---

[54] Although a different judge conducted a hearing on the original motion to suppress filed by Partlow, the State subsequently filed a superseding indictment jointly charging Partlow and Hill as parties to the trafficking and possession with intent charges. Hill then joined in Partlow's motion to suppress during trial, when the trial court judge reviewed – and adopted – the other judge's ruling on the motion.

the legality of the stop, the search of the car, and the seizure of the evidence,[55] this alleged error lacks merit for the reasons given in Division 2, supra.

*Judgments affirmed. Barnes, P. J., and McMillian, J., concur.*

---

[55] See *Cooper*, 260 Ga. App. at 334-335 (1) ("A passenger who asserts no possessory interest in the car or the items found within it has no standing to challenge a search of the car directly. [However, a] passenger does have standing to challenge the stop and detention of the car because . . . the interest in freedom of movement and the interest in being free from fear and surprise are personal to all occupants of the vehicle, and an individual's interest is not diminished simply because he is a passenger as opposed to the driver when the stop occurred. Because a passenger has standing to challenge his own detention, . . . we hold that [the passenger] had standing to challenge his own detention and the subsequent search of [the driver's] car.") (footnotes omitted).