**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 29, 2020**

# In the Court of Appeals of Georgia

A20A1051. GRULLON v. THE STATE.

McFADDEN, Chief Judge.

After a jury trial, Victor Grullon[1] was convicted of trafficking in 28 or more grams of a mixture containing heroin (OCGA § 16-13-31 (b) (3)). On appeal, he challenges the sufficiency of the evidence, arguing that there was no evidence from which a jury could find that he was in constructive possession of the drugs, but the evidence satisfies the standard of *Jackson v. Virginia*, 443 US 307 (99 SCt 2781, 61 LE2d 560) (1979). He also argues that the trial court gave an erroneous jury charge, but he has not shown reversible error because he affirmatively stated to the trial court that he had no objection after the jury was charged. So we affirm.

---

[1] Portions of the record, including the judgment of conviction, state Grullon's last name as "Grullon-Francisco." The name "Grullon" is used in the notice of appeal, so we use that name here.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict and the defendant no longer is presumed innocent. *Johnson v. State*, 304 Ga. 610, 612 (1) (b) (820 SE2d 690) (2018). Where, as here, a defendant challenges the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 US at 319 (III) (B) (emphasis in original).

So viewed, the trial evidence showed that in early 2016 the federal Drug Enforcement Administration, in concert with various local law enforcement agencies, was conducting an investigation into Marcelo Enciso-Rodriguez. They believed Enciso-Rodriguez was acting as a middleman in a heroin trafficking operation that involved a supplier in Mexico known as "Mariachi" and buyers from places such as New York and Philadelphia. The buyers would drive to the metro Atlanta area and meet Enciso-Rodriguez at a QuikTrip convenience store, where he would give them a car battery in which heroin was concealed.

As part of their investigation, law enforcement officers conducted surveillance on Enciso-Rodriguez through telephone wiretaps, through a camera mounted on a pole in the QuikTrip parking lot, and through a stake out of them from across the street from the QuikTrip. In January 2016 they observed a transaction involving Enciso-Rodriguez and a person named Tomas Hernandez, at which Enciso-Rodriguez gave Hernandez a car battery. Enciso-Rodriguez spoke with Mariachi before and after that meeting, using coded phrases referring to Hernandez and to the amount of money involved in the transaction.

On February 5, 2016, Mariachi and Enciso-Rodriguez spoke on the phone about another transaction. Apparently referring to the buyer, Mariachi told Enciso-Rodriguez that "he left today" and would arrive to meet with Enciso-Rodriguez at some point the following day, possibly in the morning. On the morning of February 6, Enciso-Rodriguez had a series of telephone conversations with a person, initially referred to in the wiretap transcripts as an unknown male and later referred to as Grullon. That person sought directions to the QuikTrip in those calls. Grullon and Hernandez, the buyer from the January transaction, arrived at the QuikTrip in a vehicle with New York plates that was registered to Grullon. Enciso-Rodriguez gave Hernandez a car battery, which he placed in the vehicle, and Hernandez and Grullon

3

drove away, followed by law enforcement officers who arranged for the vehicle to be stopped soon thereafter for a tag violation.

When the vehicle was stopped, Hernandez was driving and Grullon was the passenger. Hernandez consented to a search of the vehicle. He told the officers that he and Grullon had been in Atlanta for two days visiting a friend. And he told the officers that the battery in the back of the vehicle belonged to him.[2] When the officers began asking questions about the car battery, Grullon appeared as though he might pass out. Ultimately the officers cut apart the battery and found in it six bricks of a substance, one of which was tested and found to be a mixture containing heroin and to weigh 465 grams.

Under OCGA § 16-13-31 (b), a "person who sells, manufactures, delivers, brings into this state, or has possession of four grams or more of any [of a list of specified] substance[s], . . . including heroin, . . . or four grams or more of any mixture containing any such substance . . . commits the felony offense of trafficking

---

[2] Grullon asserts in his appellate brief that Hernandez made this statement on the recording of the traffic stop, which was entered into evidence as State's Exhibit 1 and played for the jury. It is clear from the trial transcript that the recording included an audio component, but the copy of the recording included in the appellate record contains no audio. In its appellate brief, the state agrees that Hernandez made this statement, so for purposes of our analysis we will take as true the assertion that Hernandez said the battery was his.

4

in illegal drugs[.]" Grullon was convicted of trafficking in 28 or more grams of a mixture containing heroin, subjecting him to increased punishment under OCGA § 16-13-31 (b) (3).

Grullon argues that the evidence in this case was insufficient to show that he knowingly possessed the heroin found in the battery in his vehicle. We disagree.

"[P]ossession of drugs can be actual or constructive, sole or joint." *Jones v. State*, 339 Ga. App. 95, 97 (1) (a) (791 SE2d 625) (2016) (citations and punctuation omitted). Constructive possession exists where the defendant

> knowingly has both the power and the intention at a given time to exercise dominion or control over a thing. A finding of constructive possession cannot rest solely upon the person's spatial proximity to the object. However, as long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact.

*Partlow v. State*, 346 Ga. App. 473, 480 (3) (816 SE2d 474) (2018) (citation, punctuation, and footnote omitted). As to knowledge and intent,

> it has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband. [And] OCGA § 16-2-6 provides that a jury may find criminal intention "upon consideration of words,

5

conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."

Id. at 481 (3) (citation omitted).

In this case, there was evidence of more than mere spatial proximity between Grullon and the battery containing the heroin. There was evidence that Grullon owned the vehicle in which the heroin was found, which gave rise to an evidentiary presumption that Grullon was in constructive possession of it. See *Partlow*, 346 Ga. App. at 481 (3). The evidence of Grullon's ownership of the vehicle distinguishes this case from *Gillis v. State*, 285 Ga. App. 199, 200 (1) (645 SE2d 674) (2007), cited by Grullon, because the defendant in *Gillis* was merely a passenger in the car in which drugs were found. Grullon argues that the presumption should not apply because Hernandez had equal access to the battery and at the traffic stop had claimed responsibility for it. But the equal access rule does not apply in this case because Grullon and Hernandez were charged with joint constructive possession of the drugs found in the vehicle. See *Partlow*, 346 Ga. App. at 481 (3); *Jones*, 339 Ga. App. at 98 (1) (a); *McCants v. State*, 338 Ga. App. 733, 737 (791 SE2d 611) (2016). Our decision in *Hughes v. State*, 215 Ga. App. 6 (449 SE2d 547) (1994), on which Grullon bases his equal access argument, is inapposite, because it involved a vehicle

6

passenger who had actual possession of the drugs. See *Ramirez v. State*, 290 Ga. App. 3, 5 (1) (658 SE2d 790) (2008).

In addition to the presumption arising from Grullon's ownership of the vehicle in which the drugs were found, other circumstantial evidence also supported a finding that Grullon was in constructive possession of the battery containing heroin. See *Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017) ("Constructive possession can be proven — and very often is proven — by circumstantial evidence."). There is evidence that on February 6, 2016, Grullon participated in a series of calls with Encino-Rodriguez concerning the place and time of their meeting to get the battery. While Grullon challenged the credibility of this evidence at trial, it was for the jury to decide if that challenge was effective. See *Yarn v. State*, 305 Ga. 421, 423 (2) (826 SE2d 1) (2019) (appellate review "leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence"). There is also evidence that Grullon was present when Hernandez placed the battery in the car. When he was asked about the battery at the traffic stop, he appeared visibly disturbed. And Hernandez's explanation that he and Grullon had been in Atlanta for two days was inconsistent

7

with Mariachi's statement to Enciso-Rodriguez that the buyer had left for Atlanta the day before.

These types of circumstances support a finding that Grullon had the necessary knowledge and intent for constructive possession of the heroin. See *Partlow*, 346 Ga. App. at 481 (3) (evidence of defendant's general demeanor during traffic stop supported inference that defendant knew there was cocaine in car he had been driving); *McCants*, 338 Ga. App. at 737 (evidence of the defendant's "odd behavior when stopped by the officer" and inconsistent explanations given by the defendant and others in his vehicle about where they had been supported finding of constructive possession of drugs); *Able v. State*, 312 Ga. App. 252, 253-255 (1) (718 SE2d 96) (2011) (evidence that the defendant, as a favor, had driven a friend to a grocery store parking lot with a sealed, insulated bag containing ziplock bags of marijuana was sufficient to support the defendant's conviction for possession with intent to distribute, even though the defendant argued that there was no evidence either that he knew what was inside the bag or that his friend had told him he was planning to sell drugs); *Flores v. State*, 308 Ga. App. 368, 370 (1) (707 SE2d 578) (2011) (finding evidence sufficient to show that the defendant was in constructive possession of drugs inside a vehicle driven by another person, even though there was not

8

evidence that he himself had been inside the vehicle, where the defendant had asked that person to drive the vehicle, had given that person the keys, had told that person where to drive and park the vehicle, and had led that person at least part of the way to that location).

We are not persuaded by Grullon's argument that this circumstantial evidence was insufficient because it failed to exclude all reasonable hypotheses save for his guilt. See OCGA § 24-14-6. "[W]hether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law." *Lebis*, 302 Ga. at 754 (II) (citation and punctuation omitted). Accord *Brown v. State*, 304 Ga. 435, 437 (1) (819 SE2d 14) (2018). Based on Hernandez's statements to the officers at the traffic stop, Grullon proposes a hypothesis that he had driven with Hernandez to Atlanta to visit a friend and that he had merely accompanied Hernandez on Hernandez's errand to the QuikTrip to get the battery, not knowing its contents. The jury had no obligation to accept Hernandez's statements as true or to find Grullon's proposal to be reasonable.

2. *Jury charge.*

9

Grullon argues that the trial court erred in giving a jury charge on the issue of deliberate ignorance because the charge equated intent with knowledge. The trial court charged:

> The element of knowledge, intent, may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw such an inference is a matter solely within your discretion.

The state concedes that this charge was error. "[A] charge on deliberate ignorance that equates intent with knowledge, or which tends to confuse those concepts, is erroneous." See *Matos-Bautista v. State*, 353 Ga. App. 773, 778 (1) (839 SE2d 260) (2020). But Grullon did not preserve this claim of error for regular appellate review. Although he objected to the charge at the charge conference (albeit on different grounds), Grullon did not object to the charge at the time it was given. "For that reason, [his] claim that the trial court erred by [giving] the charge is subject to review only for plain error." *Nalls v. State*, 304 Ga. 168, 172 (2) (a) (815 SE2d 38) (2018).

10

And Grullon cannot show plain error, which among other things requires a showing that the error "has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant." *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation omitted). After giving the charge to the jury, the trial court asked if Grullon had any objection to it, and his trial counsel responded "no." By affirmatively stating that he had no objection to the charge to the jury, Grullon waived any claim that the charge was improper, meaning that he cannot show plain error. See *Lee v. State*, 347 Ga. App. 508, 512 (2) (b) (820 SE2d 147) (2018).

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*